J-A28036-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOYCE REAL, | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | | |
| v. | | |
| LAWRENCE REAL, | | |
| Appellee | | No. 299 EDA 2015 |

Appeal from the Order Entered December 22, 2014
In the Court of Common Pleas of Montgomery County
Domestic Relations at No(s): 2005-20886

BEFORE:  GANTMAN, P.J., PANELLA, and SHOGAN, JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED DECEMBER 14, 2015**

Appellant, Joyce Real ("Wife"), appeals *pro se* from the order entered on December 22, 2014.  We affirm.[1]

In its Pa.R.A.P. 1925(a) opinion, the trial court provided a thorough recitation of the relevant facts and procedural history of this matter, which were set forth as follows:

_____

[1] On October 19, 2015, following the October 6, 2015 oral argument on this matter, Wife filed a motion with this Court requesting that we read her brief. Motion, 10/16/15, at 1.  Wife's prayer for relief in the motion is as follows: "[Wife] respectfully requests that this Honorable Court read [Wife's] Brief and Reviews Evidence [Wife] has on the Record and Reverses the Order of the Lower Court in its Entirety."  Motion, 10/19/15, at 6.  As the members of this panel have carefully read and reviewed Wife's brief, we **DENY** her motion as moot.

On November 9, 2007, an equitable distribution hearing was held on the equitable distribution claims of [Wife] and Defendant/Appellee Lawrence Real (hereinafter "[Husband]") before Master in Equitable Distribution Bruce Goldenberg, Esquire. On February 8, 2008, Mr. Goldenberg issued a report deciding the parties' economic issues. [Wife] filed exceptions to the report on March 3, 2008, and her exceptions were denied after hearing by the Honorable Arthur R. Tilson on May 16, 2008. A final divorce decree and order w[ere] entered by Judge Tilson on July 25, 2008. [Wife] did not file a motion for reconsideration of the decree and order, nor did she file a notice of appeal.

Paragraph 1 of the July 25, 2008 decree and order states in part:

> "The property located at 75 West Levering Mill Road, Bala Cynwyd, Pennsylvania shall be sold. The evidence reflects that the house will not be able to be sold as long as Wife is residing there. Therefore, Husband will be granted exclusive possession of the property for the purpose of preparing the property ready for sale."

Paragraph 8 of the decree and order states in part:

> "Husband will pay alimony to Wife for a period of eight (8) years following the entry of this Divorce Decree. The amount of the alimony will be in the amount of $3,500.00 per month."

On October 15, 2008, [Husband] filed a Petition for Special Relief requesting enforcement of paragraph 1 of the July 25, 2008 divorce decree and order since [Wife] refused to vacate the marital residence. While [Husband's] petition was pending, on May 20, 2009 Judge Tilson issued an order finding [Wife] to be an "incapacitated person who is not represented in the action" and appointed Maria Gibbons, Esquire as a guardian ad litem for [Wife]. The underlying matter was stayed by the court while the issue of [Wife's] competence was litigated in the Montgomery County Orphan's Court.

[Husband] filed a second petition for special relief on March 17, 2010 requesting that the stay order be vacated and requesting that [Wife] be held in contempt, that [Wife] be

evicted from the marital residence so that it could be sold pursuant to the terms of the July 25, 2008 decree and order, and that [Husband] receive credit for payments made to [Wife] and to third parties on her behalf, against his alimony obligation as set forth in the decree and order.

On November 24, 2010, The Honorable Lois E. Murphy of the Montgomery County Orphan's Court declared [Wife] "a totally incapacitated person" and appointed Cheryl L. Austin, Esquire as guardian ad litem for [Wife].[1] On December 7, 2011, Judge Murphy issued an order vacating the appointment of Ms. Austin as [Wife's] guardian ad litem, and appointed Jacqueline J. Shafer, Esquire as counsel for [Wife].[2] On January 21, 2011, a stipulation for agreed order vacating appointment of guardian ad litem was entered as an order of the court, removing Ms. Gibbons appointment as [Wife's] guardian ad litem. On January 30, 2012, Judge Murphy vacated the November 24, 2010 order lifting the finding of [Wife's] incapacitation and the matter was referred to family court.

> [1] By agreement of counsel for both parties', as stated on the record at the June 4, 2014 hearing, the court took judicial notice of the orders issued in the Orphan's Court matter.
>
> [2] The Honorable Cheryl L. Austin was elected to the bench of the Court of Common Pleas of Montgomery County in November, 2011.

On February 3, 2014, [Wife] filed a Petition to Modify divorce order and decree in the nature of a nunc pro tunc Petition. In her petition, [Wife] requested that the court modify the July 25, 2008 decree and order by "permitting discovery of the up to now hidden assets", and "to hold in abeyance a decision regarding the distribution of these assets pending receipt of the information concerning them ..."

The court held hearings in this matter on March 25, 2014, June 4, 2014 and October 14, 2014. At the hearings, [Wife] was represented by Lauren H. Kane, Esquire, and [Husband] was represented by Harry M. Byrne, Esquire.

At the March 25, 2014 hearing, [Husband] testified that he has attempted to obtain possession and title to the marital

residence at 75 West Levering Mill Road in Bala Cynwyd, Pennsylvania since 2008 when the parties['] divorce decree was entered granting him exclusive possession of the property. [Husband] testified that on March 16, 2011, a stipulation for agreed order was entered which gave him credit on his alimony payments of $3,500.00 per month for 29 months, from August 1, 2008 until December 31, 2010. N.T. March 25, 2014 at 12-14. [Husband] testified that he has made additional payments for the support and maintenance of the marital residence by paying the mortgage, a home equity loan homeowner's insurance, and taxes from 2011 until the time of the hearing. N.T. March 25, 2014 at 14-26. [Husband] testified that the marital residence has fallen into a state of disrepair since 2006, the last time he was inside the property. N.T. March 25, 2014 at 26-31.

At the June 4, 2014 hearing, counsel for both parties made oral argument on [Wife's] February 3, 2014, Petition to Modify divorce order and decree in the nature of a nunc pro tunc petition. In her argument, counsel for [Wife] argued that the petition was based on extrinsic fraud only, "We're not talking about intrinsic fraud here. We're talking about extrinsic fraud." N.T. June 4, 2014 at 22. [Wife's] counsel alleged that there were hidden assets which were not disclosed at the time of the equitable distribution hearing, and, therefore, her petition to open the divorce decree should be granted. [Wife's] counsel also argued that the statute of limitations pursuant to 23 Pa.C.S.A. §3332, "Opening or vacating decrees", was tolled from the date of Judge Tilson's May 20, 2009 order until [Wife] was declared by Judge Murphy to be competent on January 30, 2012. N.T. June 4, 2014 at 23.

Defense counsel argued to the court that [Wife]'s allegations as to hidden assets of [Husband's] had no basis, especially in light of the fact that [Wife], although declared incompetent, was represented from May 20, 2009 until January 30, 2012 by counsel and/or guardians ad litem, and had retained a financial expert, Gregory Cowhey, at the time of equitable distribution. Defense counsel argued that [Wife] alleged that there are hidden assets since 2005 when she filed a complaint in divorce. Her allegations in the February 3, 2014 Petition to Modify divorce order and decree were raised before, and had been investigated by prior counsel for [Wife]. N.T. June 4, 2014 at 31-35. Defense counsel also argued that, contrary to [Wife's] counsel's assertion, there had never been an agreement or

stipulation to stay [Wife's] eviction from the marital residence. N.T. June 4, 2014 at 45.

At the June 4, 2014 hearing, the court asked counsel on the record: "Does anybody have any objection if I look at the Orphan's Court record?" The Court added: "I could take judicial notice of Orphan's Court record. Am I allowed to do that?" Counsel for both parties stated that they had no objection to the court doing so.

At the October 14, 2014 hearing, [Wife] provided testimony that she had "... lots of other evidence to substantiate that [Husband] was running a phantom business..." and engaging in "cyber laundering", and using "fake label credit cards", however, no persuasive nor dispositive substantive evidence was presented to the court, and Defense counsel's objections to [Wife's] statements were sustained. N.T. October 14, 2014 at 47-48.

On December 22, 2014, the court issued an order which stated as follows:

> AND NOW, this 22nd day of December, 2014, upon consideration of [Husband's] October 15, 2008 Petition for Special Relief, Contempt, and Other Relief, [Wife's] February 3, 2014 Petition to Modify Divorce Order and Decree in the Nature of a Nunc Pro Tunc Petition, [Wife's] April 16, 2014 Brief In Support of Petition to Modify Divorce Order and Decree in the Nature of a Nunc Pro Tunc Petition, [Husband's] April 17, 2014 Memorandum of Law RE Opening Decree, and following hearings on March 25, 2014, June 4, 2014 and October 14, 2014, it is hereby ORDERED and DECREED as follows:
>
> [Wife's] February 3, 2014 Petition is DENIED.
>
> [Husband's] October 15, 2008 Petition for Special Relief is GRANTED in part as follows:
>
> [Wife] is found in contempt of the July 25, 2008 Decree and Order.

> [Wife] shall vacate the martial [sic] residence at 75 West Levering Mill Road, Bala Cynwyd, PA 19004 and execute a quit-claim deed in [Husband's] favor no later than ninety (90) days from the date of this Order.
>
> By virtue of the direct payments made to [Wife] or on her behalf, [Husband] shall receive a credit for one monthly alimony payment ($3,500.00) for each month from January 1, 2011 to the date that [Wife] vacates the martial [sic] residence.
>
> [Husband] shall, as per the terms of the July 25, 2008 Decree and Order, commence alimony payments to [Wife] contemporaneous with [Wife] vacating the marital residence.
>
> [Husband's] request for counsel fees is DENIED.

Trial Court Opinion, 3/27/15, at 1-6.

Wife filed a timely notice of appeal on January 20, 2014. On January 22, 2014, the trial court ordered Wife to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On January 28, 2014, Wife filed a six-page document entitled "[Wife's] Concise Statement of Errors Complained of on Appeal," which contained numerous accusations of fraud, allegations of hidden assets, and claims of trial court error. On March 27, 2015, the trial court filed its Pa.R.A.P. 1925(a) opinion.

We have reviewed the record, the briefs of the parties, and the applicable legal authority, and we discern no abuse of discretion or error of law in this matter. While we are sensitive to the factual circumstances evident in the case at bar, we are nevertheless convinced that the trial court

aptly addressed and properly disposed of the issues Wife has raised on appeal. As such, we affirm the December 22, 2014 order on the basis of the trial court's well-reasoned opinion.[2]

Order affirmed.[3]

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/14/2015</u>

_____

[2] The parties are hereby directed to attach a copy of the trial court's March 27, 2015 opinion in the event of further proceedings in this matter.

[3] Husband's October 1, 2015 Motion to Quash is **DENIED**.

- 7 -

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY**
**CIVIL ACTION – LAW**

| | | |
|---|---|---|
| **JOYCE REAL,** | : | **SUPERIOR COURT** |
| **PLAINTIFF/APPELLANT** | : | **DOCKET NO. 299 EDA 2015** |
| | : | |
| **v.** | : | |
| | : | **LOWER COURT** |
| **LAWRENCE REAL** | : | **DOCKET NO. 2005-20886** |
| **DEFENDANT/APPELLEE** | : | |

## OPINION

**COONAHAN, J.**                                                     **MARCH 27, 2015**

On November 9, 2007, an equitable distribution hearing was held on the equitable distribution claims of Plaintiff/Appellant Joyce Real (hereinafter "Plaintiff") and Defendant/Appellee Lawrence Real (hereinafter "Defendant") before Master in Equitable Distribution Bruce Goldenberg, Esquire. On February 8, 2008, Mr. Goldenberg issued a report deciding the parties' economic issues. Plaintiff filed exceptions to the report on March 3, 2008, and her exceptions were denied after hearing by the Honorable Arthur R. Tilson on May 16, 2008. A final divorce decree and order was entered by Judge Tilson on July 25, 2008. Plaintiff did not file a motion for reconsideration of the decree and order, nor did she file a notice of appeal.

Paragraph 1 of the July 25, 2008 decree and order states in part:

> "The property located at 75 West Levering Mill Road, Bala Cynwyd, Pennsylvania shall be sold. The evidence reflects that the house will not be able to be sold as long as Wife is residing there. Therefore, Husband will be granted exclusive possession of the property for the purpose of preparing the property ready for sale."

Paragraph 8 of the decree and order states in part:



2005-20886-0200  3/27/2015 12:32 PM   # 10235558
Opinion
Rcpt#Z2365369 Fee:$0.00
Mark Levy - MontCo Prothonotary

"Husband will pay alimony to Wife for a period of eight (8) years following the entry of this Divorce Decree. The amount of the alimony will be in the amount of $3,500.00 per month."

On October 15, 2008, Defendant filed a Petition for Special Relief requesting enforcement of paragraph 1 of the July 25, 2008 divorce decree and order since Plaintiff refused to vacate the marital residence. While Defendant's petition was pending, on May 20, 2009 Judge Tilson issued an order finding Plaintiff to be an "incapacitated person who is not represented in the action" and appointed Maria Gibbons, Esquire as a guardian ad litem for Plaintiff. The underlying matter was stayed by the court while the issue of Plaintiff's competence was litigated in the Montgomery County Orphan's Court.

Defendant filed a second petition for special relief on March 17, 2010 requesting that the stay order be vacated and requesting that Plaintiff be held in contempt, that Plaintiff be evicted from the marital residence so that it could be sold pursuant to the terms of the July 25, 2008 decree and order, and that Defendant receive credit for payments made to Plaintiff and to third parties on her behalf, against his alimony obligation as set forth in the decree and order.

On November 24, 2010, The Honorable Lois E. Murphy of the Montgomery County Orphan's Court declared Plaintiff "a totally incapacitated person" and appointed Cheryl L. Austin, Esquire as guardian ad litem for

2

Plaintiff.[1] On December 7, 2011, Judge Murphy issued an order vacating the appointment of Ms. Austin as Plaintiff's guardian ad litem, and appointed Jacqueline J. Shafer, Esquire as counsel for Plaintiff.[2] On January 21, 2011, a stipulation for agreed order vacating appointment of guardian ad litem was entered as an order of the court, removing Ms. Gibbons appointment as Plaintiff's guardian ad litem. On January 30, 2012, Judge Murphy vacated the November 24, 2010 order lifting the finding of Plaintiff's incapacitation and the matter was referred to family court.

On February 3, 2014, Plaintiff filed a Petition to Modify divorce order and decree in the nature of a nunc pro tunc Petition. In her petition, Plaintiff requested that the court modify the July 25, 2008 decree and order by "permitting discovery of the up to now hidden assets", and "to hold in abeyance a decision regarding the distribution of these assets pending receipt of the information concerning them..."

The court held hearings in this matter on March 25, 2014, June 4, 2014 and October 14, 2014. At the hearings, Plaintiff was represented by Lauren H. Kane, Esquire, and Defendant was represented by Harry M. Byrne, Esquire.

At the March 25, 2014 hearing, Defendant testified that he has attempted to obtain possession and title to the marital residence at 75 West Levering Mill Road in Bala Cynwyd, Pennsylvania since 2008 when the parties

---

[1] By agreement of counsel for both parties', as stated on the record at the June 4, 2014 hearing, the court took judicial notice of the orders issued in the Orphan's Court matter.
[2] The Honorable Cheryl L. Austin was elected to the bench of the Court of Common Pleas of Montgomery County in November, 2011.

3

divorce decree was entered granting him exclusive possession of the property. Defendant testified that on March 16, 2011, a stipulation for agreed order was entered which gave him credit on his alimony payments of $3,500.00 per month for 29 months, from August 1, 2008 until December 31, 2010. N.T. March 25, 2014 at 12-14. Defendant testified that he has made additional payments for the support and maintenance of the marital residence by paying the mortgage, a home equity loan homeowner's insurance, and taxes from 2011 until the time of the hearing. N.T. March 25, 2014 at 14-26. Defendant testified that the marital residence has fallen into a state of disrepair since 2006, the last time he was inside the property. N.T. March 25, 2014 at 26-31.

At the June 4, 2014 hearing, counsel for both parties made oral argument on Plaintiff's February 3, 2014, Petition to Modify divorce order and decree in the nature of a nunc pro tunc petition. In her argument, counsel for Plaintiff argued that the petition was based on extrinsic fraud only, "We're not talking about intrinsic fraud here. We're talking about extrinsic fraud." N.T. June 4, 2014 at 22. Plaintiff's counsel alleged that there were hidden assets which were not disclosed at the time of the equitable distribution hearing, and, therefore, her petition to open the divorce decree should be granted. Plaintiff's counsel also argued that the statute of limitations pursuant to 23 Pa.C.S.A. §3332, "Opening or vacating decrees", was tolled from the date of Judge Tilson's May 20, 2009 order until Plaintiff was declared by Judge Murphy to be competent on January 30, 2012. N.T. June 4, 2014 at 23.

4

Defense counsel argued to the court that Plaintiff's allegations as to hidden assets of Defendant's had no basis, especially in light of the fact that Plaintiff, although declared incompetent, was represented from May 20, 2009 until January 30, 2012 by counsel and/or guardians ad litem, and had retained a financial expert, Gregory Cowhey, at the time of equitable distribution. Defense counsel argued that Plaintiff alleged that there are hidden assets since 2005 when she filed a complaint in divorce. Her allegations in the February 3, 2014 Petition to Modify divorce order and decree were raised before, and had been investigated by prior counsel for Plaintiff. N.T. June 4, 2014 at 31-35. Defense counsel also argued that, contrary to Plaintiff's counsel's assertion, there had never been an agreement or stipulation to stay Plaintiff's eviction from the marital residence. N.T. June 4, 2014 at 45.

At the June 4, 2014 hearing, the court asked counsel on the record: "Does anybody have any objection if I look at the Orphan's Court record?" The Court added: "I could take judicial notice of Orphan's Court record. Am I allowed to do that?" Counsel for both parties stated that they had no objection to the court doing so.

At the October 14, 2014 hearing, Plaintiff provided testimony that she had "...lots of other evidence to substantiate that [Defendant] was running a phantom business..." and engaging in "cyber laundering", and using "fake label credit cards", however, no persuasive nor dispositive substantive evidence was presented to the court, and Defense counsel's objections to Plaintiff's statements were sustained. N.T. October 14, 2014 at 47 -48.

5

On December 22, 2014, the court issued an order which stated as follows:

> AND NOW, this 22nd day of December, 2014, upon consideration of Defendant's October 15, 2008 Petition for Special Relief, Contempt, and Other Relief, Plaintiff's February 3, 2014 Petition to Modify Divorce Order and Decree in the Nature of a Nunc Pro Tunc Petition, Plaintiff's April 16, 2014 Brief In Support of Petition to Modify Divorce Order and Decree in the Nature of a Nunc Pro Tunc Petition, Defendant's April 17, 2014 Memorandum of Law RE Opening Decree, and following hearings on March 25, 2014, June 4, 2014 and October 14, 2014, it is hereby ORDERED and DECREED as follows:
>
> Plaintiff's February 3, 2014 Petition is DENIED.
> Defendant's October 15, 2008 Petition for Special Relief is GRANTED in part as follows:
> Plaintiff is found in contempt of the July 25, 2008 Decree and Order.
> Plaintiff shall vacate the martial residence at 75 West Levering Mill Road, Bala Cynwyd, PA 19004 and execute a quit-claim deed in Defendant's favor no later than ninety (90) days from the date of this Order.
> By virtue of the direct payments made to Plaintiff or on her behalf, Defendant shall receive a credit for one monthly alimony payment ($3,500.00) for each month from January 1, 2011 to the date that Plaintiff vacates the martial residence.
> Defendant shall, as per the terms of the July 25, 2008 Decree and Order, commence alimony payments to Plaintiff contemporaneous with Plaintiff vacating the marital residence.
> Defendant's request for counsel fees is DENIED.

On January 20, 2015 Plaintiff filed a Notice of Appeal to the Superior Court of Pennsylvania of the December 22, 2014 Order issued by this court. On January 22, 2015, the trial court issued an Order directing Plaintiff to file with the trial court a Concise Statement of Errors Complained of on Appeal pursuant to Pa. R.A.P. 1925 (b) within twenty one (21) days of the date of the Order. On January 28, 2015, Plaintiff filed her Concise Statement of

6

Matters Complained of on Appeal setting forth her matters complained of on appeal which are as follows[3]:

"A. THE HONORABLE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY REFUSING TO RULE DEFENDANT BE ORDERED TO PAY ALIMONY, WHICH HE RECEIVED FALSE CREDIT FOR PAYING. DEFENDANT IS PAYING A MORTGAGE AND HOME EQUITY LOAN. BOTH ARE HOME EQUITY LINES OF CREDIT HE IS PAYING TO HIMSELF. ONE IS DEPOSITED INTO A DIRECT DEPOSIT ACCOUNT (THIS IS ON THE RECORD BUT NOT ADMITTED INTO EVIDENCE). ALTHOUGH HE MAKES WITHDRAWALS FROM THE OTHER SAID CREDIT LIEN (WHICH WAS ADMITTED INTO EVIDENCE), TO OSTENSIBLY PAY THE MORTGAGE ON THE MARITAL HOME, HE SUBSEQUENTLY AND CONSISTENTLY DEPOSITS MONIES BACK INTO THE ACCOUNT FOR HIS OWN PERSONAL USE. AS A RESULT, THE HOME EQUITY LINE OF CREDIT NEVER DECREASED OR DECREASES. AS SUCH, HUSBAND SHOULD NOT HAVE BEEN RECEIVING CREDIT FOR ALIMONY PAYMENTS NOR SHOULD IT BE ATTRIBUTED TO HIM THAT HE HAS PAID DOWN THE MARITAL DEBT OF A MORTGAGE ON THE MARITAL HOME. THE PLAINTIFF IS ENTITLED TO RECEIVE THE ALIMONY PAYMENTS, AND ANY CREDIT DEFENDANT WAS FALSELY GIVEN SHOULD BE RETROACTIVELY ERASED. THE COURT SHOULD RECOGNIZE THAT DEFENDANT IS NOT HIDING HIS FRAUD, JUST RESISTING DISCOVERY. DEFENDANT'S DISHONESTY OF PURPOSE, INTENT TO DECEIVE AND ACTUAL FRAUD SHOULD FINALLY BE EXPOSED, THROUGH A FORENSIC ACCOUNTING. PLAINTIFF

---

[3] The Court notes that Plaintiff's concise statement does not comply with Pa.R.A.P. 1925(b)(4)(iv) which states in part: "The Statement should not be redundant or provide lengthy explanations as to any error." Plaintiff's concise statement is also a lengthy recitation of information, some of which was not admitted as evidence at the hearings, it refers to hearings before other judges, transcripts of which were not made part of the record before this court, and it contains unsubstantiated allegations, characterizations, and argument.

7

SPENT THREE YEARS, FROM 2008 TO 2011, ORGANIZING TWENTY-NINE YEARS OF CASH FLOW DATA SHOWING HOW DEFENDANT MOVED ASSETS OUT OF THE MARITAL ESTATE AND UNDER HIS CONTROL. A FORENSIC ACCOUNTING MUST BE DIRECTED BY AN ATTORNEY. THE DEFENDANT HAS SUCCESSFULLY RESISTED A FORENSIC ACCOUNTING THREE TIMES, BY COVERTLY AGGRESSING PLAINTIFF'S ATTORNEYS AND MANIPULATING PLAINTIFF'S FUNDS. SUBSEQUENTLY HE WAS ABLE TO DEFLECT ATTENTION FROM THE DISCOVERY TO A DOCKET FULL OF FALSE CHARGES AND PETITIONS ATTACKING THE PLAINTIFF. THIS RESULTED IN HEARINGS BASED ON HE SAID SHE SAID, INSTEAD OF FACTS.

B. THE HONORABLE TRIAL COURT ERRED AND ABUSED ITS DISCRETION – AS WELL AS DENIED PLAINTIFF DUE PROCESS – BY LIMITING THE NUMBER OF MARITAL ASSETS PLAINTIFF WAS ALLOWED TO BRING IN VIA NUNC PRO TUNC (INCLUDING THE PHANTOM RESTAURANT, JARDIN, LISTED ON EXPERIAN CREDIT REPORT AS A BUSINESS LOCATED AT MARITAL RESIDENTIAL ADDRESS). PLAINITFF'S ATTORNEY ONLY MENTIONED THE PENN MUTUAL ANNUITY AND PUTNAM ACCOUNTS AS THE TIP OF THE ICEBERG. PLAINTIFF SEEKS TO RECOVER HER HALF OF THE PARTIES MARITAL ESTATE. PLAINTIFF'S ATTORNEY, AT THAT TIME, DID NOT WANT TO GIVE AWAY EVERYTHING PLAINTIFF KNEW IN THE MOTION FOR NUNC PRO TUNC, BECAUSE EVERY TIME DEFENDANT HAS HAD KNOWLEDGE OF EVIDENCE AGAINST HIM, HE HAS MANAGED TO SQUASH IT. THE PLAINTIFF HAS EVERY RIGHT TO HAVE A FULL FORENSIC ACCOUNTING (DESPITE THE RESISTANCE DEFENDANT CREATED) AND AN EQUITABLE DIVISION OF HER MARITAL ASSETS. THIS COURT SHOULD NOT BE ALLOWED TO PERPETRATE THE DEFENDANT'S FRAUD. DR. REAL'S FRAUD IS

8

PARTICULARLY REPUGNANT AS HE AND HIS SUPERLAWYER, HAVE CONSISTENTLY OPERATED BEHIND THE COURT AND ABOVE THE LAW TO OBFUSCATE THE BIG PICTURE, EVADE PROPERTY DIVISION AND PREVENT PLAINTIFF'S DUE PROCESS, NOT ONLY TO DEFRAUD HER, BUT ALSO TO TRY TO HOODWINK THE COURT.

C. THE HONORABLE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY NOT SAYING WHETHER OR NOT THE FRAUD STATUTE WOULD BE TOLLED DURING THE TIME THE PLAINTIFF WAS DEEMED MENTALLY INCAPACITATED.

D. THE HONORABLE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY SAYING THAT IT WOULD LOOK INTO WHAT HAPPENED IN THE ORPHANS COURT IN THE THREE PREVIOUS HEARINGS BEFORE THE LAST AND NOT FOLLOWING THROUGH. HAD THE TRIAL COURT FOLLOWED IT'S INTIAL INSTINCTS AND LOOKED INTO THE TRANSCRIPTS OF THE ORPHANS COURT, IT WOULD SEE PLAINTIFF SHOWED EVIDENCE THAT THE LED THE HONORABLE ORPHAN'S COURT JUDGE TO CONCLUDE: THAT THE FOUNDATION OF THE DEFENDANT'S CASE IS BUILT ON FRAUD, THAT THE DEFENDANT WAS LYING AND ATTACKING HER LAWYERS/GUADIANS SO SHE COULDN'T MAKE HER CASE, THAT HE WAS DELIBERATELY KEEPING HER OUT OF FUNDS AND THAT IT WAS THE DEFENDANT/PSYCHIATRIST WHO WAS BEHIND THE INCAPACITATED PERSON'S DECREE TO BEGIN WITH. ALL THIS LED THE ORPHANS' COURT TO VACATE THE INCAPACITATED PERSON DECREE.

E. THE HONORABLE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY SAYING PLAINTIFF SHOULD SIGN A QUIT CLAIM DEED TO DEFENDANT. PLAINTIFF IS ENTITLED TO HER

9

SHARE OF THE MARITAL HOME AS ORDERED IN THE ORIGINAL AND VAGUE DECREE, WHICH SHE WOULD NOT GET IF FORCED TO SIGN OVER TO DEFENDANT. PLAINTIFF WAS NOT REPRESENTED BY COUNSEL AT THE TIME OF EQUITABLE DISTRIBUTION. THE DEFENDANT PROCEEDED TO DISMANTLE THE ORIGINAL DECREE THROUGH THE PLAINTIFF'S COURT APPOINTED GUARDIANS, WHILE HAVING PLAINTIFF TIED UP IN ORPHANS' COURT, STIGMATIZED AS MENTALLY ILL, DECLARED INCAPACITATED, AND ON THE BRINK OF AN EVICTION ORDER. PLAINTIFF PREVIOUSLY DEMONSTRATED TO THE HONORABLE TRIAL COURT JUDGE TILSON, DEFENDANT USED EQUITY IN THE MARITAL HOME TO INVEST IN OTHER PROPERTIES, LIKE THE ABN AMRO MORTGAGE, PAID IN FULL, IN BOTH PARTIES NAMES. SAID MORTGAGE IS NOT PART OF MARITAL RESIDENCE RECORD OF DEED WHICH THE DEFENDANT IS OPERATING HIS MORTGAGE/ALIMONY SCAM OFF OF. JUDGE TILSON STAYED THE EVICTION AND APPOINTED THE GUARDIANS FOR THE PURPOSE OF AFFORDING TIME AND ASSISTANCE TO HELP THE PLAINTIFF PROVE FRAUD. THE DEFENDANT, ONCE AGAIN COVERTLY AGGRESSED PLAINTIFF'S GUARDIANS/COUNSEL TO POISON THEIR PERCEPTION OF HER, CREATE FEAR AND ANTIPATHY TOWARDS HER, IGNORE HER AND UNWITTINGLY SWITCH THEIR ALLEGIANCE TO THE DEFENDANTS AGENDA, TO REDUCE ALL RESISTANCE TO EVERYTHING BEING HIS. FOLLOWING THE MONEY THROUGH A FORENSIC ACCOUNTING AND CASH FLOW ANALYSIS (OF PLAINTIFF'S DISCOVERY) WOULD LAY ALL ARGUMENTS TO REST. IT WOULD CLEARLY SHOW THE DEFENDANTS MOTIVE, HIS INABILITY TO SHARE, HIS CONSCIOUSNESS OF GUILT, EXTREME "WINNER TAKES ALL" MENTALITY, AND THE DETAILED PLANNING THAT WENT INTO STOCKPILING ASSETS THEN MOVING THEM OUT OF THE MARITAL ESTATE AND UNDER

10

HIS SOLE CONTROL. DR. REAL'S SUPERLAWYER EXPENSES HAVE TO BE IN EXCESS OF $300,000.00 OVER THE PAST NINE AND A HALF YEARS. IF HE HAS NOTHING TO HIDE, WHY IS HE INVESTING SO MUCH TO HIDE IT?

F. THE HONORABLE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN BELIEVING DEFENDANT WILL PAY ALIMONY CONTEMPORANEOUSLY WITH DEFENDANT LEAVING THE HOUSE. THE DEFENDANT ALREADY VOCALIZED THAT THE TRIAL COURT WAS WRONG AND THAT HE IS DONE PAYING ALIMONY. EVEN THOUGH THE BULK OF THOSE ALIMONY CREDITS WERE PROVEN TO BE FAKE. DEFENDANT IS ON ORPHANS' COURT RECORD CLAIMING HE ACCELERATED ALIMONY PAYMENTS THROUGH ARRANGEMENTS WITH PLAINTIFF'S GUARDIANS AND WAS FINISHED PAYING IN 02/2013. IF PLAINTIFF IS FORCED TO LEAVE HER HOME, DEFENDANT PLANS TO PAY HER NOTHING. DEFENDANT SHOULD BE FORCED TO WRITE A ONE TIME CHECK COVERING ALL FUTURE ALIMONY OWED AS WELL AS PAST ALIMONY HE SHOULD NOT HAVE RECEIVED CREDIT FOR. PLAINTFF DEMONSTRATED TO THE COURT SHE SOUGHT TO DOWNSIZE TO A SMALLER RESIDENCE IMMEDIATLEY FOLLOWING THE DEFENDANT'S ABANDONMENT. THE DEFENDANT REFUSED TO TALK TO HER, FORCING THE HER TO BE SUBJECT TO HIS ALIMONY/MORTGAGE SCAM. THAT IS ON THE RECORD THOUGH THE HONORABLE TRIAL COURT JUDGE DID NOT ADMIT THE PLAINTIFF'S PROOF INTO EVIDECNE. THIS DEMONSTRATES DR. REAL'S CALLOUS INDIFFERENCE TO SPOUSE, HIS INTENT TO DEPRIVE WIFE OF MARITAL ASSETS, INCLUDING A HOME AND ANY KIND OF LIFESTYLE.

11

G. THE HONORABLE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ENFORCING THE PLAINTIFF AND HER SON TO BE EVICTED FROM THE FAMILY HOME ON AN ORDER BASED ON THE DEFENDANTS MALICIOUS FRAUD, WHICH DISCOVERY PROVES HE PLANNED THROUGHOUT THE COURSE OF THE PARTIES TWENTY-THREE YEAR MARRIAGE, AND SUBSEQUENTLY CARRIED OUT THROUGH THE COURT FOR ALMOST TEN YEARS. WITHOUT SOME KIND OF EQUITABLE DIVISION OF PROPERTY AND PROTECTION FROM THE DEFENDANT'S OPPRESSION AND ABUSE, DR. REAL'S FORMER SPOUSE AND FAMILY WILL NEVER BE ABLE TO RECOVER AND START SOME KIND OF LIFE AGAIN. THE SEVERE DAMAGE CAUSED BY DEFENDANTS DELIBERATE INFLICTION OF MENTAL ANGUISH CAN ONLY BE EXPOSED IN A COURT OF EQUITY, AFTER EXPOSING HIS RELATIONSHIP TO MONEY WHICH REQUIRES AN ANALYSIS OF THE MARITAL CASH FLOW. IT IS AWFULLY HARD TO INSIST ON PLAINTIFF'S ADHERENCE TO THE RULE OF LAW WHILE THE DEFENDANTS COMMITMENT TO THE RULE OF LAW IS HOW TO GO BEHIND IT, GET AROUND IT, RISE ABOVE IT AND EVADE IT. THE COURT EXISTS TO LEVEL THE PLAYING FIELD. IN THIS CASE, THE DEFENDANT COVERTLY PUSHED THE PLAINTIFF OFF THE FIELD."

This opinion is filed pursuant to and is in compliance with Pa. R.A.P. 1925 (a).

When reviewing an appeal from a contempt order, the appellate court "must place great reliance upon the sound discretion of the trial judge." Godfrey v. Godfrey, 894 A.2d 776, 2006 PA Super 39 (2006); Langendorfer v. Spearman, 797 A.2d 303, 2002 PA Super 93 (2002). The scope of review for the appellate court is very narrow, and the appellate court is limited to

12

"determining whether the trial court committed an abuse of discretion." Godfrey, 2006 PA Super (2006). The trial court abuses its discretion in a contempt case if it "misapplies the law or exercises its discretion in a manner lacking reason." Godfrey, 2006 PA Super 39 (2006); Hopkins v. Byes, 954 A.2d 654, 2008 PA Super 172 (2008). In order to support a finding of civil contempt, the petitioner must prove that the contemnor had notice of the specific order or decree which is alleged to have been disobeyed; that the act constituting the contemnor's violation was volitional; and that the contemnor acted with wrongful intent. Harcar v. Harcar, 982 A.2d 1230, 2009 PA Super 203 (2009). A party alleging contempt of a court order has the burden to show a party violated an order by a preponderance of the evidence. Hopkins, 2008 PA Super 172 (2008).

There are two limitations on attacks upon divorce decrees. The first, 23 Pa.C.S.A. § 3331, "Limitations on attacks upon decrees", states:

> "The validity of a decree of divorce or annulment issued by a court shall not be questioned, except by appeal, in any court or place in this Commonwealth after the death of either party to the proceeding. If it is shown that a party who subsequently attempts to question the validity of the decree had full knowledge of the facts and circumstances the latter complained of at the time of the issuance of the decree or failed to take any action despite this knowledge within two years after the date of the decree, the party shall be barred from questioning the decree, and it shall be valid in all courts and places within this Commonwealth."

The second limitation on an attack of a divorce decree is set forth in 23 Pa.C.S.A. §3332, "Opening or vacating decrees". Pursuant to 23 Pa.C.S.A. §3332, the first basis for vacating a divorce decree is proof of intrinsic fraud

13

which must be raised within thirty days of the entry of the decree. A general plea to economic justice will not satisfy the requirements for opening or vacating a divorce decree after the expiration of the thirty day period. Melton v. Melton , 831 A.2d 646, Super. 2003.

Beyond the thirty day limitation period, a party may rely on the second basis under 23 Pa.C.S,A. §3332, where a party must prove extrinsic fraud, lack of jurisdiction over the subject matter, or a fatal defect apparent from the record in order to vacate or open a divorce decree. Justice v. Justice, 612 A.2d 1354, 417 Pa.Super.581, Super. 1992. A divorce decree cannot be vacated beyond the thirty day limitation period absent extrinsic fraud which is collateral to the proceedings and which arises from actions taken by the prevailing party. Justice v. Justice, 612 A.2d 1354."Extrinsic fraud" that permits opening of a divorce decree more than thirty days after its entry extends to situations in which one party coerces another into relinquishing economic claims arising from the marriage. Justice v. Justice, 612 A.2d 1354. While a trial court has equitable powers in divorce proceedings, they do not extend to ignoring limited statutory circumstance in which a final divorce decree can be vacated. Justice v. Justice, 612 A.2d 1354.

The court addresses the Plaintiff's claims, as best as the court is able to discern them, as follows;

"A. THE HONORABLE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY REFUSING TO RULE DEFENDANT BE ORDERED TO PAY ALIMONY, WHICH HE RECEIVED FALSE CREDIT FOR PAYING. DEFENDANT IS PAYING A MORTGAGE AND HOME EQUITY LOAN. BOTH ARE HOME EQUITY LINES OF CREDIT HE

14

IS PAYING TO HIMSELF. ONE IS DEPOSITED INTO A DIRECT DEPOSIT ACCOUNT (THIS IS ON THE RECORD BUT NOT ADMITTED INTO EVIDENCE). ALTHOUGH HE MAKES WITHDRAWALS FROM THE OTHER SAID CREDIT LIEN (WHICH WAS ADMITTED INTO EVIDENCE), TO OSTENSIBLY PAY THE MORTGAGE ON THE MARITAL HOME, HE SUBSEQUENTLY AND CONSISTENTLY DEPOSITS MONIES BACK INTO THE ACCOUNT FOR HIS OWN PERSONAL USE. AS A RESULT, THE HOME EQUITY LINE OF CREDIT NEVER DECREASED OR DECREASES. AS SUCH, HUSBAND SHOULD NOT HAVE BEEN RECEIVING CREDIT FOR ALIMONY PAYMENTS NOR SHOULD IT BE ATTRIBUTED TO HIM THAT HE HAS PAID DOWN THE MARITAL DEBT OF A MORTGAGE ON THE MARITAL HOME. THE PLAINTIFF IS ENTITLED TO RECEIVE THE ALIMONY PAYMENTS, AND ANY CREDIT DEFENDANT WAS FALSELY GIVEN SHOULD BE RETROACTIVELY ERASED. THE COURT SHOULD RECOGNIZE THAT DEFENDANT IS NOT HIDING HIS FRAUD, JUST RESISTING DISCOVERY. DEFENDANT'S DISHONESTY OF PURPOSE, INTENT TO DECEIVE AND ACTUAL FRAUD SHOULD FINALLY BE EXPOSED, THROUGH A FORENSIC ACCOUNTING. PLAINTIFF SPENT THREE YEARS, FROM 2008 TO 2011, ORGANIZING TWENTY-NINE YEARS OF CASH FLOW DATA SHOWING HOW DEFENDANT MOVED ASSETS OUT OF THE MARITAL ESTATE AND UNDER HIS CONTROL. A FORENSIC ACCOUNTING MUST BE DIRECTED BY AN ATTORNEY. THE DEFENDANT HAS SUCCESSFULLY RESISTED A FORENSIC ACCOUNTING THREE TIMES, BY COVERTLY AGGRESSING PLAINTIFF'S ATTORNEYS AND MANIPULATING PLAINTIFF'S FUNDS. SUBSEQUENTLY HE WAS ABLE TO DEFLECT ATTENTION FROM THE DISCOVERY TO A DOCKET FULL OF FALSE CHARGES AND PETITIONS ATTACKING THE PLAINTIFF. THIS RESULTED IN HEARINGS BASED ON HE SAID SHE SAID, INSTEAD OF FACTS.

15

Contrary to Plaintiff's claim in paragraph "A" of her 1925(b) Concise Statement that the court "erred and abused its discretion by refusing to rule Defendant be ordered to pay alimony", the court ordered on December 22, 2014 that Defendant shall pay alimony, "contemporaneous with Plaintiff vacating the marital residence". Defendant's obligation to pay alimony to Plaintiff was previously ordered in the July 25, 2008 decree and order, (which was not appealed from) and, the issue of whether or not Defendant should be "ordered" to pay alimony to Plaintiff was not an issue which was before the court at the March 25, 2014, June 4, 2014 and October 14, 2014 hearings. The issues before this court at the hearings were enforcement of the exclusive possession clause of the July 25, 2008 decree and order, and, whether or not to open or vacate the July 25, 2008 decree and order. Furthermore, credit which Defendant received for alimony and other payments that he had made between August 1, 2008 and December 31, 2010 were ordered pursuant to the March 17, 2011 stipulation for agreed order for alimony credits. The court notes that this agreed order was signed by Plaintiff's guardian ad litem at the time, Ms. Austin (now Judge Austin).

If Plaintiff is referring in paragraph "A" of her 1925(b) Concise Statement to the December 22, 2014 order in which the court ordered that Defendant receive a credit "for one monthly alimony payment ($3,500.00) for each month from January 1, 2011 to the date that Plaintiff vacates the marital residence", Defendant testified that he had made additional payments for the support and maintenance of the marital residence by

16

paying the mortgage, a home equity loan, homeowner's insurance, and taxes from 2011 until the time of the hearing. N.T. March 25, 2014 at 14-26. The evidence showed that for 2011 through 2013, Defendant made payments on behalf of Plaintiff and to maintain the marital residence, of $187,875.00, which is $61,875.00 above the court ordered alimony figure of $42,000 per year.[4] The court found that Defendant's payments from 2011 to the time of the hearings were made in order to benefit and support Plaintiff. The court also found that the payments were made to maintain the marital home in which Plaintiff continued to reside for several years despite the 2008 court order giving Defendant exclusive possession of the marital home. Therefore, the court did not err or abuse its discretion by ordering that Defendant receive alimony credit for the payments he made between 2011 and 2013 as testified to at the March 25, 2014 hearing.

Plaintiff's claims as raised in paragraph "A" of her 1925(b) Concise Statement are without merit, contain evidence not admitted at the hearings before this court, are speculative, and, therefore, should be dismissed.

B. THE HONORABLE TRIAL COURT ERRED AND ABUSED ITS DISCRETION – AS WELL AS DENIED PLAINTIFF DUE PROCESS – BY LIMITING THE NUMBER OF MARITAL ASSETS PLAINTIFF WAS ALLOWED TO BRING IN VIA NUNC PRO TUNC (INCLUDING THE PHANTOM RESTAURANT, JARDIN, LISTED ON EXPERIAN CREDIT REPORT AS A BUSINESS LOCATED AT MARITAL RESIDENTIAL ADDRESS). PLAINITFF'S ATTORNEY ONLY MENTIONED THE

---

[4] In 2011, Defendant made a payment of $14,000.00 towards a new car for Plaintiff and he parties' son, however, Defendant testified that that amount "should be subtracted...I did not consider that as part of the total [alimony and marital residence payments]."

17

PENN MUTUAL ANNUITY AND PUTNAM ACCOUNTS AS THE TIP OF THE ICEBERG. PLAINTIFF SEEKS TO RECOVER HER HALF OF THE PARTIES MARITAL ESTATE. PLAINTIFF'S ATTORNEY, AT THAT TIME, DID NOT WANT TO GIVE AWAY EVERYTHING PLAINTIFF KNEW IN THE MOTION FOR NUNC PRO TUNC, BECAUSE EVERY TIME DEFENDANT HAS HAD KNOWLEDGE OF EVIDENCE AGAINST HIM, HE HAS MANAGED TO SQUASH IT. THE PLAINTIFF HAS EVERY RIGHT TO HAVE A FULL FORENSIC ACCOUNTING (DESPITE THE RESISTANCE DEFENDANT CREATED) AND AN EQUITABLE DIVISION OF HER MARITAL ASSETS. THIS COURT SHOULD NOT BE ALLOWED TO PERPETRATE THE DEFENDANT'S FRAUD. DR. REAL'S FRAUD IS PARTICULARLY REPUGNANT AS HE AND HIS SUPERLAWYER, HAVE CONSISTENTLY OPERATED BEHIND THE COURT AND ABOVE THE LAW TO OBFUSCATE THE BIG PICTURE, EVADE PROEPRTY DIVISION AND PREVENT PLAINTIFF'S DUE PROCESS, NOT ONLY TO DEFRAUD HER, BUT ALSO TO TRY TO HOODWINK THE COURT.

In Plaintiff's February 3, 2014, Petition to Modify divorce order and decree, Plaintiff lists two assets which Defendant allegedly did not report at the time of equitable distribution: a "Penn Mutual Annuity", and "Putnam Accounts". Defendant was on notice that he should be prepared at the hearing on Plaintiff's petition to address Plaintiff's allegations with regard to these two alleged assets. Paragraph 14 of the petition states that these assets are "just the proverbial 'tip of the iceberg.'" The court limited Plaintiff at the hearings to the allegations as set forth in her petition. At the hearings, Plaintiff's counsel again used the term "tip of the iceberg" to describe alleged missing assets. As stated by the court at the June 4, 2014 hearing, "...I don't

18

know if you think that this is just going to be a never-ending, open ended inquiry...so now we're going to get into other things that maybe somebody, or other people, find along the way." N.T. June 4, 2014 at 85-86. The court stated: "So I'm going to stick with this, with this petition...I'm not opening everything up at this point." N.T. June 4, 2014 at 86-87.

Additionally, Plaintiff's argument ignores the fact that Plaintiff's petition, on its face, is untimely pursuant to 23 Pa.C.S.A. §3332, as it was filed more than five years from the date of the entry of the divorce decree. Therefore, the court did not err or abuse its discretion in "limiting the number of marital assets Plaintiff was allowed to bring in" at the time of the hearings since Plaintiff did not meet the threshold requirement of timeliness pursuant to 23 Pa.C.S.A. §3332.

Plaintiff's petition was also untimely pursuant to 23 Pa.C.S.A. §3331 which states:

> "If it is shown that a party who subsequently attempts to question the validity of the decree had full knowledge of the facts and circumstances the latter complained of at the time of the issuance of the decree or failed to take any action despite this knowledge within two years after the date of the decree, the party shall be barred from questioning the decree, and it shall be valid in all courts and places within this Commonwealth."

Plaintiff herself states in paragraph "A" of her 1925(b) Concise Statement that she has "spent three years, from 2008-2011, organizing twenty-nine years of cash flow data showing how Defendant moved assets out of the marital estate and under his control." She also alleges in her 1925(b) Concise Statement numerous times that evidence of alleged hidden

19

assets and alleged financial fraud by Defendant has been presented at prior hearings in this matter, both in Family Court and in Orphan's Court. Therefore, prior to the filing of her petition in 2014, Plaintiff had full knowledge of the allegations she now raises and those allegations could have been pursued within the statutory time limits.

Plaintiff's claims as raised in paragraph "B" of her 1925(b) Concise Statement are without merit, speculative, and, therefore, should be dismissed.

> C. THE HONORABLE TRIAL COURT ERRED AND ABSUED ITS DISCRETION BY NOT SAYING WHETHER OR NOT THE FRAUD STATUTE WOULD BE TOLLED DURING THE TIME THE PLAINTIFF WAS DEEMED MENTALLY INCAPACITATED.

Pursuant to 23 Pa.C.S.A. §3332, the only basis for vacating a divorce decree within thirty days of its entry is intrinsic fraud; beyond the thirty day limitation period, a party must show extrinsic fraud, lack of jurisdiction over the subject matter, or a fatal defect apparent from the record. Allegations of extrinsic fraud require the bringing of a petition to open or vacate within five years of the entry of the decree. 23 Pa.C.S.A. §3332; Ratarsky v. Ratarsky, 557 A.2d 23 (1990).

Plaintiff's counsel argued at the hearings that there was financial information pertaining to two accounts that Defendant had not disclosed prior to the divorce decree being entered and did not testify to at the equitable distribution hearing. Plaintiff's counsel referred to this as extrinsic fraud. However, Plaintiff's allegations, if true, would represent intrinsic fraud,

20

requiring a petition to open or vacate to be filed within 30 days of the entry of the decree.

Intrinsic fraud is defined in 23 Pa.C.S.A. §3332 as dealing with allegations of perjury and false testimony. By arguing that Defendant lied about his assets and did not disclose all the assets he had at the time of equitable distribution, Plaintiff is arguing that the decree should be opened and vacated due to intrinsic fraud. Therefore, her petition to open and vacate the decree should have been brought within thirty days of the entry of the decree. "[W]here the intrinsic fraud or new evidence attacking the validity of the decree is alleged, a motion to open must be filed within 30 days after the entry of the decree..." Hassick v. Hassick, 695 A.2d 851 (1997). Even if Plaintiff had alleged extrinsic fraud, her February 3, 2014 petition to modify divorce order and decree was filed beyond the five year statute of limitations.

At the hearings, Plaintiff argued, and continues to argue in her 1925(b) Concise Statement, that she was not mentally incapacitated at any time during the course of these proceedings, and that it was the Defendant who deceived the courts, and Plaintiff's attorneys and guardians ad litem, into concluding that she was mentally incapacitated. From the date of Judge Tilson's May 20, 2009 order finding Plaintiff to be an incapacitated person, until Judge Murphy's January 30, 2012 order lifting Plaintiff's incapacitation, the Plaintiff was represented by guardians ad litem, and counsel. From May, 2009, until January, 2012, none of Plaintiff's legal representatives filed a petition to open or vacate the July 25, 2008 divorce decree.

21

The court finds Plaintiff's argument to be disingenuous when she alleges that Defendant deceived and manipulated the Orphan's Court judge into an unsupported finding of incompetency, yet, she wants this court to toll the statute of limitations on her February 3, 2014 Petition to Modify divorce order and decree since she was found to be incompetent. Furthermore, Plaintiff was represented during the Orphan's Curt proceedings by guardians ad litem and counsel. Plaintiff's argument that the statute of limitations for the filing of her February 3, 2014 petition to modify divorce order and decree should be tolled is, therefore, without merit and her claim in paragraph "C" of her 1925(b) Concise Statement should be dismissed.

> D. THE HONORABLE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY SAYING THAT IT WOULD LOOK INTO WHAT HAPPENED IN THE ORPHANS COURT IN THE THREE PREVIOUS HEARINGS BEFORE THE LAST AND NOT FOLLOWING THROUGH. HAD THE TRIAL COURT FOLLOWED IT'S INTIAL INSTINCTS AND LOOKED INTO THE TRANSCRIPTS OF THE ORPHANS COURT, IT WOULD SEE PLAINTIFF SHOWED EVIDENCE THAT THE LED THE HONORABLE ORPHAN'S COURT JUDGE TO CONCLUDE: THAT THE FOUNDATION OF THE DEFENDANT'S CASE IS BUILT ON FRAUD, THAT THE DEFENDANT WAS LYING AND ATTACKING HER LAWYERS/GUADIANS SO SHE COULDN'T MAKE HER CASE, THAT HE WAS DELIBERATELY KEEPING HER OUT OF FUNDS AND THAT IT WAS THE DEFENDANT/PSYCHIATRIST WHO WAS BEHIND THE INCAPACITATED PERSON'S DECREE TO BEGIN WITH. ALL THIS LED THE ORPHANS' COURT TO VACATE THE INCAPACITATED PERSON DECREE.

22

At the June 4, 2014 hearing, the court asked counsel on the record: "Does anybody have any objection if I look at the Orphan's Court record?" The Court added: "I could take judicial notice of Orphan's Court record. Am I allowed to do that?" Counsel for both parties stated that they had no objection to the court doing so. The court raised this issue so that the court could review specific orders and rulings which were made in the Montgomery County Orphan's Court in connection with the matters before the family court. The court did not state on the record that it would "look into what happened in the Orphan's Court in the three previous hearings", or look "into the transcripts of the Orphan's Court" in order to revisit or relitigate the findings and rulings which were made and issued in Orphan's Court. The Orphan's Court litigation was not the subject of the inquiry before the court at the March 25, 2014, June 4, 2014 and October 14, 2014 hearings. The inquiry before the court was limited to the merits of Defendant's October 15, 2008 Petition for special relief, and Plaintiff's February 3, 2014 Petition to Modify divorce order and decree in the nature of a nunc pro tunc petition.

Plaintiff's claims as raised in paragraph "D" of her 1925(b) Concise Statement are without merit, contain evidence not admitted at the hearings before this court, refer to legal proceedings which did not occur before this court, are speculative, and, therefore, should be dismissed.

E. THE HONORABLE TRIAL COURT ERRED AND ABUSED ITS
DISCRETION BY SAYING PLAINTIFF SHOULD SIGN A QUIT
CLAIM DEED TO DEFENDANT. PLAINTIFF IS ENTITLED TO HER
SHARE OF THE MARITAL HOME AS ORDERED IN THE ORIGINAL

23

AND VAGUE DECREE, WHICH SHE WOULD NOT GET IF FORCED TO SIGN OVER TO DEFENDANT. PLAINTIFF WAS NOT REPRESENTED BY COUNSEL AT THE TIME OF EQUITABLE DISTRIBUTION. THE DEFENDANT PROCEEDED TO DISMANTLE THE ORIGINAL DECREE THROUGH THE PLAINTIFF'S COURT APPOINTED GUARDIANS, WHILE HAVING PLAINTIFF TIED UP IN ORPHANS' COURT, STIGMATIZED AS MENTALLY ILL, DECLARED INCAPACITATED, AND ON THE BRINK OF AN EVICTION ORDER. PLAINTIFF PREVIOUSLY DEMONSTRATED TO THE HONORABLE TRIAL COURT JUDGE TILSON, DEFENDANT USED EQUITY IN THE MARITAL HOME TO INVEST IN OTHER PROPERTIES, LIKE THE ABN AMRO MORTGAGE, PAID IN FULL, IN BOTH PARTIES NAMES. SAID MORTGAGE IS NOT PART OF MARITAL RESIDENCE RECORD OF DEED WHICH THE DEFENDANT IS OPERATING HIS MORTGAGE/ALIMONY SCAM OFF OF. JUDGE TILSON STAYED THE EVICTION AND APPOINTED THE GUARDIANS FOR THE PURPOSE OF AFFORDING TIME AND ASSISTANCE TO HELP THE PLAINTIFF PROVE FRAUD. THE DEFENDANT, ONCE AGAIN COVERTLY AGGRESSED PLAINTIFF'S GUARDIANS/COUNSEL TO POISON THEIR PERCEPTION OF HER, CREATE FEAR AND ANTIPATHY TOWARDS HER, IGNORE HER AND UNWITTINGLY SWITCH THEIR ALLEGIANCE TO THE DEFENDANTS AGENDA, TO REDUCE ALL RESISTANCE TO EVERYTHING BEING HIS. FOLLOWING THE MONEY THROUGH A FORENSIC ACCOUNTING AND CASH FLOW ANALYSIS (OF PLAINTIFF'S DISCOVERY) WOULD LAY ALL ARGUMENTS TO REST. IT WOULD CLEARLY SHOW THE DEFENDANTS MOTIVE, HIS INABILITY TO SHARE, HIS CONSCIOUSNESS OF GUILT, EXTREME "WINNER TAKES ALL" MENTALITY, AND THE DETAILED PLANNING THAT WENT INTO STOCKPILING ASSETS THEN MOVING THEM OUT OF THE MARITAL ESTATE AND UNDER HIS SOLE CONTROL. DR. REAL'S SUPERLAWYER EXPENSES

24

HAVE TO BE IN EXCESS OF $300,000.00 OVER THE PAST NINE AND A HALF YEARS. IF HE HAS NOTHING TO HIDE, WHY IS HE INVESTING SO MUCH TO HIDE IT?

The evidence presented at the March 25, 2014, June 4, 2014 and October 14, 2014 hearings proved that Plaintiff, without justification, has refused to vacate the marital residence and provide Defendant with exclusive possession as required under paragraph 1 of the July 25, 2008 decree and order. Plaintiff did not file a motion for reconsideration of the July 25, 2008 decree and order, and she did not file a notice of appeal of the decree and order. Plaintiff did not present any persuasive evidence as to why she has refused to comply with the decree and order since 2008, but simply testified that she would have no place to go if she moved out of the marital residence.

Paragraph 1 of the July 25, 2008 decree and order states that the marital property shall be sold. Defendant was granted exclusive possession of the marital residence in 2008, according to the decree and order, "for the purpose of preparing the property ready for sale." Defendant testified at the hearings that due to Plaintiff's failure to vacate the marital residence for over six years, and due to the condition of the marital residence, he has been unable to sell the marital property. Therefore, the court did not err or abuse its discretion in ordering Plaintiff to vacate the marital residence and to sign a quit claim deed, which would allow Defendant to proceed with the sale of the marital residence, as previously ordered in the July 25, 2008 decree and order.

25

The court notes that Paragraph 1 of the decree and order states that the sale of the marital property will result in "a deficiency as there is not enough equity in the property to pay off the first mortgage lien and the home equity loan". Therefore, the parties' life insurance policy was to be sold to satisfy the debts on the marital property. Plaintiff would, therefore, only be entitled to a "share of the marital home" only "in the event that there is remaining cash value from the life insurance policy after the mortgage and home equity are paid." It is therefore unclear as to what "share" of the marital home Plaintiff would "not get" if required to sign a quit-claim deed for the property, or how her signing the quit-claim deed would prevent her receiving any potential remaining cash value in the life insurance policy after the home equity loan and mortgage are paid off.

Plaintiff's claims as raised in paragraph "E" of her 1925(b) Concise Statement are without merit, contain evidence not admitted at the hearings before this court, refer to legal proceedings which did not occur before this court, are speculative, and, therefore, should be dismissed.

> F. THE HONORABLE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN BELIEVING DEFENDANT WILL PAY ALIMONY CONTEMPORANEOUSLY WITH DEFENDANT LEAVING THE HOUSE. THE DEFENDANT ALREADY VOCALIZED THAT THE TRIAL COURT WAS WRONG AND THAT HE IS DONE PAYING ALIMONY. EVEN THOUGH THE BULK OF THOSE ALIMONY CREDITS WERE PROVEN TO BE FAKE. DEFENDANT IS ON ORPHANS' COURT RECORD CLAIMING HE ACCELERATED ALIMONY PAYMENTS THROUGH ARRANGEMENTS WITH PLAINTIFF'S GUARDIANS AND WAS FINISHED PAYING IN

26

02/2013. IF PLAINTIFF IS FORCED TO LEAVE HER HOME, DEFENDANT PLANS TO PAY HER NOTHING. DEFENDANT SHOULD BE FORCED TO WRITE A ONE TIME CHECK COVERING ALL FUTURE ALIMONY OWED AS WELL AS PAST ALIMONY HE SHOULD NOT HAVE RECEIVED CREDIT FOR. PLAINTFF DEMONSTRATED TO THE COURT SHE SOUGHT TO DOWNSIZE TO A SMALLER RESIDENCE IMMEDIATLEY FOLLOWING THE DEFENDANT'S ABANDONMENT. THE DEFENDANT REFUSED TO TALK TO HER, FORCING THE HER TO BE SUBJECT TO HIS ALIMONY/MORTGAGE SCAM. THAT IS ON THE RECORD THOUGH THE HONORABLE TRIAL COURT JUDGE DID NOT ADMIT THE PLAINTIFF'S PROOF INTO EVIDECNE. THIS DEMONSTRATES DR. REAL'S CALLOUS INDIFFERENCE TO SPOUSE, HIS INTENT TO DEPRIVE WIFE OF MARITAL ASSETS, INCLUDING A HOME AND ANY KIND OF LIFESTYLE.

Defendant's petition for special relief which was before the court at the hearings on March 25, 2014, June 4, 2014 and October 14, 2014, requested enforcement of the parties' July 25, 2008 divorce decree and order. Paragraph 8 of the decree and order requires Defendant to pay alimony to Plaintiff for a "period of eight (8) years following the entry of this Divorce Decree."

Even though Plaintiff refuses to vacate the marital residence, as required under paragraph 1 of the decree and order, Defendant continued to make alimony and other payments to Plaintiff until and through December, 2010. Defendant's payments to Plaintiff during that time were in excess of over $61,000.00 beyond his court-ordered alimony obligation to Plaintiff. Even when Defendant ceased making alimony payments to Plaintiff in 2011,

27

he continued to make payments for the support and maintenance of the marital residence by paying the mortgage, a home equity loan homeowner's insurance, and taxes from 2011 until the time of the hearing.

There was no persuasive evidence presented at the hearings that Defendant "vocalized that the trial court was wrong and that he is done paying alimony", as Plaintiff claims. Plaintiff's allegation that Defendant will refuse to pay alimony when she vacates the marital residence per the 2008 order is speculative, and is not based on any evidence presented to the court at the hearings. The court does not have a "belief" one way or another as to what may or may not occur in the future with regard to the parties' divorce decree and order. By ordering in the December 22, 2014 order that Defendant commence alimony payments once Plaintiff vacates the marital residence, the court was merely enforcing the terms of the parties' divorce decree and order, not speculating or forming a "belief" as to whether or not the parties will comply with the decree in the future.

Plaintiff's claims as raised in paragraph "F" of her 1925 (b) Concise Statement are without merit, contain evidence not admitted at the hearings before this court, refer to legal proceedings which did not occur before this court, are speculative, and, therefore, should be dismissed.

> G. THE HONORABLE TRIAL COURT ERRED AND ABUSED
> ITS DISCRETION BY ENFORCING THE PLAINTIFF AND
> HER SON TO BE EVICTED FROM THE FAMILY HOME ON
> AN ORDER BASED ON THE DEFENDANTS MALICIOUS
> FRAUD, WHICH DISCOVERY PROVES HE PLANNED
> THROUGHOUT THE COURSE OF THE PARTIES TWENTY-

28

THREE YEAR MARRIAGE, AND SUBSEQUENTLY CARRIED OUT THROUGH THE COURT FOR ALMOST TEN YEARS. WITHOUT SOME KIND OF EQUITABLE DIVISION OF PROPERTY AND PROTECTION FROM THE DEFENDANT'S OPPRESSION AND ABUSE, DR. REAL'S FORMER SPOUSE AND FAMILY WILL NEVER BE ABLE TO RECOVER AND START SOME KIND OF LIFE AGAIN. THE SEVERE DAMAGE CAUSED BY DEFENDANTS DELIBERATE INFLICTION OF MENTAL ANGUISH CAN ONLY BE EXPOSED IN A COURT OF EQUITY, AFTER EXPOSING HIS RELATIONSHIP TO MONEY WHICH REQUIRES AN ANALYSIS OF THE MARITAL CASH FLOW. IT IS AWFULLY HARD TO INSIST ON PLAINTIFF'S ADHERENCE TO THE RULE OF LAW WHILE THE DEFENDANTS COMMITMENT TO THE RULE OF LAW IS HOW TO GO BEHIND IT, GET AROUND IT, RISE ABOVE IT AND EVADE IT. THE COURT EXISTS TO LEVEL THE PLAYING FIELD. IN THIS CASE, THE DEFENDANT COVERTLY PUSHED THE PLAINTIFF OFF THE FIELD."

Plaintiff states that she is being "evicted...on an order based on the Defendant's malicious fraud...without some kind of equitable division of property". As previously stated in this opinion, an equitable distribution hearing was held before Master in Equitable Distribution Bruce Goldenberg, Esquire on November 9, 2007, and on February 8, 2008, Mr. Goldenberg issued a report deciding the parties' economic issues. Plaintiff filed exceptions to the report on March 3, 2008, and her exceptions were denied by Judge Tilson on May 16, 2008. A final divorce decree and order was entered on July 25, 2008. Plaintiff did not file a motion for reconsideration of the decree and order, nor did she file a notice of appeal.

29

There has been no finding that the July 25, 2008 order was "based on the Defendant's malicious fraud", and Plaintiff has had a full and fair opportunity to litigate her equitable division of marital property issues before the court. Therefore, the court did not err or abuse its discretion by enforcing the terms of the July 25, 2008 decree and order which gives Defendant exclusive possession of the marital residence.

Plaintiff's claims as raised in paragraph "G" of her 1925(b) Concise Statement are without merit, contain evidence not admitted at the hearings before this court, and, therefore, should be dismissed.

In sum, Plaintiff's claims as raised in her Concise Statement are without merit, contain evidence not admitted at the hearings before this court, refer to legal proceedings which did not occur before this court, and are speculative. For the above reasons, the court respectfully requests that Plaintiff's appeal to the Superior Court of Pennsylvania be denied, and the court's December 22, 2014 order be affirmed.

**BY THE COURT:**

**PATRICIA E. COONAHAN, J.**

Copies of the above Opinion sent
on 3/ 27 /15 to the following:
**By First-Class Mail:**

Harry M. Byrne, Jr., Esquire
Joyce Real, 75 W. Levering Mill Road, Bala Cynwyd, PA 19004
Lawrence Real, 212 Idris Road, Apt. 2A, Merion Station, PA 19066

Secretary

30