**John E. HOPKINS, Jr., Appellee**

v.

**Sonya F. BYES, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 28, 2008.

Filed July 30, 2008.

Jennifer K. Fisher, Erie, for appellant.

Charbel G. Latouf, Erie, for appellee.

BEFORE: BENDER, GANTMAN and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Sonya F. Byes, mother of the parties' minor son, DOB 12/28/97, appeals from the July 24, 2007, Order finding her in contempt on the basis she interfered with child custody by ignoring a visitation Order. As a sanction, the court also assessed mother attorney's fees totaling $500. By Order entered in this Court on February 29, 2008, this matter was remanded for preparation of a trial court Opinion and to allow supplementation of the record by the parties. The trial court complied on May 28, 2008, and we thereafter allowed the parties time within which to respond. Appellant complied on June 3, 2008; appellee, whose brief was due ten days hence on June 13, 2008, has not responded. The appeal is now ripe for our review.

¶ 2 On appeal, mother argues generally that the evidence presented does not support a finding of contempt; mother avers she did not prevent father from seeing the child, but rather that he chose not to see him. Mother further alleges the court erred by not considering whether she was able to pay the $500 assessed attorney's fees. Appellee father chose not to file a brief in this matter, and, as stated above, did not file a reply to the trial court's Opinion.

¶ 3 When considering an appeal from an Order holding a party in contempt for failure to comply with a court Order, our scope of review is narrow: we will reverse only upon a showing the court abused its discretion. *Hyle v. Hyle*, 868 A.2d 601 (Pa.Super.2005), *appeal denied*, 586 Pa. 727, 890 A.2d 1059 (2005). The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason. *Id.* To be in con-

tempt, a party must have violated a court Order, and the complaining party must satisfy that burden by a preponderance of the evidence. *Id.*

¶ 4 Attorney fees may be assessed as a sanction for the contemnor's refusal to comply with a court Order, causing the innocent party to incur fees in an effort to obtain what was rightfully his. *See* 42 Pa.C.S.A. § 2503, **Right of participants to receive counsel fees;** *Rhoades v. Pryce,* 874 A.2d 148 (Pa.Super.2005), *appeal denied,* 587 Pa. 724, 899 A.2d 1124 (2006) (holding attorney fees may be awarded as a sanction to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance with a court Order); *see also Goodman v. Goodman,* 383 Pa.Super. 374, 556 A.2d 1379 (1989), *appeal denied,* 523 Pa. 642, 565 A.2d 1167 (1989).

¶ 5 In his December 15, 2006, contempt petition,[1] father alleged that in violation of the parties' January 31, 2006, amended, Consent Custody Agreement, mother refused to allow the minor child to go with him on Thanksgiving Day, and father was filing this contempt petition in an effort to make sure mother did allow the agreed-upon Christmas Day visitation. Father averred that he incurred $500 in lawyer's fees in pursuing the petition.

¶ 6 The court conducted a hearing on the contempt petition on January 29, 2007, at which time appellant/mother appeared *pro se.* According to mother's testimony, when father telephoned to make arrangements to get the child on Thursday, Thanksgiving Day, mother asked that instead of getting the child at 4:00 p.m., that father delay his visitation until 6:00 p.m. because mother's family was celebrating

her birthday, which fell on the day after Thanksgiving. N.T., 1/29/07, at 6–7. According to mother, father refused, demanding that he have the child from 4:00 p.m. until 9:00 p.m. When mother would not compromise, father chose to not see his son at all on Thanksgiving Day 2006, and did not show up the following Saturday, for his scheduled 11:00 a.m. to 9:00 p.m. visitation with the child. *Id.* at 7. It was mother's testimony that from Thanksgiving Day until the day of the hearing, January 29, 2007, she did not hear from appellee. When asked about Christmas Day and the child's December birthday, mother testified, "[n]o show, no call, no gifts, nothing. [Child's] birthday is December 28th, nothing." *Id.* at 7.

¶ 7 When asked by the court what happened on Thanksgiving Day, father testified that at approximately 11:30 a.m., he received a cell phone call from his son. After chatting briefly with the child about the day's arrangements, mother got on the line. Mother asked that father not pick up the child until 6:00 p.m., instead of 4:00 p.m., because it was her birthday. Father testified that he refused, telling mother his family dinner was set for 4:30 p.m., and her birthday "didn't count" for purposes of the visitation agreement. *Id.* at 8–9. Angry, both parties hung up. Father stated that he did not call mother again until the Saturday after Thanksgiving, at about 10:30 a.m., in anticipation of picking up the child for his usual Saturday visit. *Id.* at 9. When mother refused to allow the child to sleep over that Saturday night, father chose to not exercise his 11:00 a.m. to 9:00 p.m., court-ordered visitation time. *Id.* at 11. Father also chose not to exercise his visitation rights the next day, Sunday,

---

1. Also at this time, father filed a petition to modify custody. A conciliation was held, and on December 27, 2007, the Custody Conciliator penned an amended agreement which the parties signed. That Order was signed by the judge and filed on January 31, 2007, two days after the contempt proceedings. Record, No. 20.7.

from 2:00 p.m. to 6:00 p.m. *Id.* When the court asked father about any Christmas visitation, father testified that he telephoned repeatedly, from his cell and land line phones, but mother never answered her phone. *Id.* at 12. Father testified he did not telephone his son on his birthday because he, father, was working, and his son never returns his calls anyway. *Id.* at 12–13. The record indicates, and father does not deny, that he did not visit with his son from Thanksgiving 2006, up to the date of the hearing, January 29, 2007.

¶ 8 At the conclusion of the hearing, apparently and justifiably annoyed at both parents who have been battling over their son for eight years, the court stated that it was reserving its ruling, and directed each party to submit his or her cell and home phone records. *Id.* at 13–15. Also at this point, despite the court Order stating that Thanksgiving visitation was to be at "times by mutual agreement," *see* Record, No. 17.7, the court opined mother was wrong in not allowing father to have the child from 4:00 p.m. to 9:00 p.m., as was the prior practice. N.T. at 13, 15. The court also wisely questioned father's decision to not exercise his weekend or birthday visitation rights, apparently having chosen to not see the child from Thanksgiving to the date of the hearing, January 29.2007. *Id.* at 14–15.

¶ 9 Six months later, on July 24, 2007, the court issued and filed the following Order:

> AND NOW to-wit, this 24th day of July 2007, this Court having received the telephone records from the Plaintiff [husband] in this case and the defendant [wife] having been unable to produce the records because of issues with Verizon Telephone company not keeping appropriate records, the telephone records the Court has received from the Plaintiff [husband]

support his position that he attempted multiple times through My. [sic] Byes [mother] to have custody of his child with little or no success. Therefore, the Court GRANTS the Petition for Contempt and finds that the mother was intentionally interfering with the custody of the child and the Court awards the sum of $500.00 (Five Hundred Dollars) in attorney's fees against the Defendant in favor of the Plaintiff to be paid within 30 days from the date of this Order to the Plaintiff's counsel Charbel Latouf.

> BY THE COURT

Record, No. 22.2.

¶ 10 In her timely, court-ordered 1925(b) Statement of Matters Complained of on Appeal, mother argued she submitted her cell phone records, but was unable to procure her land line records, despite a court subpoena. She argues father also submitted his cell records, but not his land line records, and there was no indication he had telephoned mother on Christmas Day or the child's birthday. Record, No. 28.4. On these bases, mother argues, she did not violate the visitation Order, and the court erred by finding her in contempt. She also avers there was no testimony offered at the hearing regarding her ability to pay the $500 attorney fees, and she is unable to so pay. *Id.*

¶ 11 In her appellate brief, mother argues she did not violate the visitation Order on Thanksgiving Day, as was the basis of father's contempt petition; father chose to not exercise his rights because he was unhappy with the hours she was offering. As for Christmas, mother avers the phone records prove father did not call or attempt to call her that day. The parties' visitation Order states, in pertinent part, that "[t]he parents shall share Thanksgiving Day and Christmas Day; the times shall be by mutual agreement[,]" and [t]he

term 'mutual agreement' contemplates good faith discussions by both parents to reach an agreement ...". Record, No. 17.7, at 1, ¶ e), and at 2, ¶ 10

¶ 12 In its Opinion finding mother in contempt, the court reasoned as follows. As for mother's birthday, for which she argued she was entitled to visitation, the court was presented with no definitive evidence at the hearing of the actual date or of the parent's tradition of spending their birthdays with the child, and, more importantly, the custody agreement made no provision for the parties' birthdays. Trial Court Opinion, Dunlavey, J., 5/9/08, at 3. As for the 2006 Thanksgiving holiday and father's allegation of contempt, father's phone records supported his contention that he attempted to exercise his right to custody on this holiday, and mother failed to provide evidence to the contrary. "This interesting omission [of mother's phone records] does not support [mother's] testimony that she called Father and, frankly, makes her story difficult to believe." *Id.* at 4. Father's phone records on and around Christmas 2006, likewise support his argument that he tried unsuccessfully to exercise his visitation rights with his son, calling mother four times, and essentially gave up when mother would not return his calls or allow the child to telephone his father. *Id.* at 4–5. Father also admitted that because of mother's failure to cooperate, he "gave up" trying to see his son on his birthday, which fell three days after Christmas.

> The Court has no duty to compel Father to exercise his custodial time with Johnathan. But, Mother has a duty to follow the custody order and encourage Johnathan to spend time with Father. Father's decision not to follow through with visitation on or around Christmas and Johnathan's

birthday, while insensitive, is not a defense to Mother's actions. (N.T. January 29, 2007 Custody Contempt, pp. 11, 14)[.] Therefore, the Court finds Mother's refusal to permit Johnathan to visit or call Father during Christmas and his birthday to be a violation of the custody order.

*Id.* at 5.

■ ¶ 13 Employing the standard of review as set forth in *Hyle, supra,* we agree that father proved, by a preponderance of the evidence that mother was in contempt for violating the terms of their custody and visitation Order. Mother was given the opportunity to contradict father's allegation of contempt, but the record establishes she failed to present sufficient evidence to do so. Accordingly, we affirm the Order finding appellant mother in contempt.

¶ 14 Relying on *Hyle,* a case that involved a finding of contempt for an incarcerated father's failure to pay child and spousal support, mother next argues the court erred by imposing sanctions in the form of $500 attorney's fees, without first assessing her ability to pay. In *Hyle,* the Court found the trial court erred by imposing a $2500 purge when the evidence established incarcerated father did not "ha[ve] the present ability to comply with the order, i.e., pay the purge amount," and for that reason, remanded the case "to determine what conditions will be sufficiently coercive yet enable [father] to comply with the order." *Hyle* at 606.[2]

¶ 15 Clearly *Hyle,* which outcome was governed by 23 Pa.C.S.A. 4345, **Contempt for noncompliance with support Order,** is distinguishable from the matter before us, which involves a contempt finding for failure to comply with an Order addressing

---

**2.** Two judges formed the majority in *Hyle,* with the third judge concurring in the result.

visitation and custody. *See also Godfrey v. Godfrey*, 894 A.2d 776 (Pa.Super.2006) (addressing a contempt finding based on failure to pay child support, the Court cited *Hyle* and its requirement that it must be determined that the contemnor in such situations has the present ability to pay). We agree with the trial court's reasoning herein which states,

> [i]t would be unfortunate if the Superior Court were to apply the *Hyle* standard to custody matters, thereby restricting trial courts from awarding attorney fees as sanctions for custody contempt actions. It has been this Court's experience that awarding attorney fees often motivate[s] the losing party to refrain from continuing contemptible conduct. Here, as indicated by Mother's appellate counsel's May 17, 2007 letter, since the contempt hearing, "the visitation schedule has been going very well and there have not been any further complications with the custody matter.

Trial Court Opinion at 6, n. 2. Moreover, mother was ordered to pay the $500 within 90 days; as the trial court calculated and concluded, "$5.55 per day, hardly an unaffordable burden." Trial Court Opinion at 6, n. 3.

 ¶ 16 We have found no controlling case law relative to a finding of contempt based on a party's failure to comply with a visitation or custody Order that mandates a determination of the contemnor's ability to pay, prior to the imposition of a sanction in the form of attorney's fees. In fact, we direct the parties' attention to a 2007 Superior Court case involving custody and an allegation of contempt, *Holler v. Smith*, 928 A.2d 330 (Pa.Super.2007), wherein this Court upheld an award of counsel fees as a sanction for dilatory, vexatious and obdurate behavior,[3] without a discussion relative to the contemnor's ability to pay.

¶ 17 In its summary, the trial court wisely reasoned, "[t]his Court cannot compel both parties to like each other, but it can encourage them to try and work together in the best interests of Johnathan." Trial Court Opinion at 7. And, as the trial court also noted, its imposition of reasonable attorney fees as a sanction appears to have caused the parties to take a step toward the desired end of amicable cooperation. *See id.* at 6, n. 2. We conclude the court did not err or abuse its discretion by imposing $500 attorney's fees as a sanction, without first ascertaining mother's ability to pay.

¶ 18 Having found each of mother's arguments devoid of merit, we affirm the Order of July 24, 2007, finding mother in contempt for violating the terms of the parties' custody and visitation Order, and assessing against her a sanction of $500 attorney fees.

¶ 19 Order affirmed.

---

**3.** *See* 42 Pa.C.S.A. § 2503, **Right of partici-** pants to receive counsel fees (7).