J-S09028-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M.D.G. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.C.M. | : | |
| | : | |
| Appellant | : | No. 1699 MDA 2017 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| P.R.G. AND D.S.G. | : | |

Appeal from the Order Entered October 6, 2017
In the Court of Common Pleas of Franklin County Civil Division at No(s):
2014-1898

BEFORE:   GANTMAN, P.J., McLAUGHLIN, J., and PLATT*, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED APRIL 04, 2018**

M.C.M. ("Mother") appeals from the order granting a Petition for Civil Contempt for Disobedience of Custody Order and ordering Mother to pay reasonable counsel fees in the amount of $1,000.00 to P.R.G and D.S.G. ("Grandparents") and to M.D.G. ("Father"), and to provide make-up custody time to Grandparents and Father. We affirm the finding of contempt and the award of reasonable counsel fees as to Grandparents. We conclude that the trial court did not err in awarding make-up custody time because Mother agreed to provide such time. We vacate the order to the extent it awards reasonable counsel fees to Father.

_____
*   Retired Senior Judge assigned to the Superior Court.

In a May 29, 2014 order, the trial court awarded Mother primary physical custody of B.G. ("Child"), Father partial physical custody every Friday from 12:00 p.m. to 5:00 p.m., and Mother and Father shared legal custody. The order stated that Father was to exercise physical custody at Grandparents' home.[1] Grandparents filed a petition for special relief and, on February 22, 2016, the trial court amended the custody order to provide that Grandparents were to have physical custody of Child every other weekend. The order directed that the parties attend a conciliation. On June 1, 2016, Father and Grandparents filed a Praecipe to Discontinue, requesting that the prothonotary "discontinue the above captioned matter." Praecipe to Discontinue, filed June 1, 2016.

On December 29, 2016, Grandparents filed a Petition for Civil Contempt for Disobedience of Custody Order, stating that Mother had not allowed Father or Grandparents to see child for more than ten weeks and that Mother had failed to answer any phone call or text message for six weeks. Pet. For Civil Contempt for Disobedience of Custody Order, filed 12/29/16, at ¶ 3. The petition concluded that: "[Grandparents] respectfully request that the Court find [Mother] in contempt and order that primary physical custody of [Child] be given to [Grandparents], or in the alternative,

_____

[1] This order became final after 180 days, when neither party moved or filed a praecipe with the trial court to schedule a hearing or pre-trial conference. Order of Court and Directive for Conciliation, filed 5/29/14, at 2.

- 2 -

[Grandparents] shall have periods of make-up time every weekend from 5 P.M. Friday until 5 P.M. Sunday for the next four (4) weeks." *Id.* at 2.

The trial court held a hearing on January 31, 2017, which Mother did not attend. That same day, the trial court found Mother in contempt[2] and ordered that the weekly visits with Father and bi-weekly visits with Grandparents resume and that Grandparents have make-up custody time. Order of Court, filed 1/31/17, at 1-2. The trial court further ordered Mother to pay $1,000.00 in counsel fees. *Id.* at 2.[3] Mother appealed and this Court remanded to the trial court for a hearing at which Mother would be present. We further concluded that the trial court had jurisdiction over the contempt proceeding because the Praecipe to Discontinue was not sufficient to discontinue a custody action, reasoning that the trial court had not granted leave to, and the parties did not have a written agreement to, discontinue the action. *M.D.G. v. M.C.M.*, No. 372 MDA 2017, unpublished memorandum at 4 (Pa.Super. filed Aug. 4, 2017) (citing Pa.R.C.P. 1915.3-1(b)(2)(A)-(B)).

_____

[2] On February 13, 2017, Grandparents filed a *pro se* Petition for Civil Contempt for Disobedience of Custody Order, stating that Mother did not provide custody time following the January 31, 2017 order.

[3] The trial court also required Mother to provide her contact information to Father and Grandparents and update information for the medical providers evaluating or treating Child. Order, filed 1/31/17, at 2.

On remand, the trial court held a hearing on October 4, 2017, at which all parties were present. Counsel for Father and Grandparents stated that he represented all three parties. N.T., 10/4/17, at 6. When discussing the motion that the parties would address at the hearing, counsel agreed that he was proceeding on the contempt petition he filed "on behalf of the [Gs]," using the last name of Grandparents and Father, which is the same. *Id.*

P.R.G. ("Grandmother") testified that at the time of the January 31, 2017 hearing, she had not seen Child in 16 weeks.[4] N.T., 1/31/17, at 9. She stated that in October 2016 Mother informed Father that the custody order had been canceled and she therefore would not let him or Grandparents see Child. *Id.* Grandmother continued to send text messages to Mother, but Mother stopped responding after four weeks. *Id.* at 13. Grandmother and Father drove to Mother's home, but Mother had relocated. *Id.* at 12. Grandmother testified that Mother told people "that she changed [her] phone numbers so we could no longer get a hold of her and contact her." *Id.* at 10. She further testified that she did not know where Mother lived, that Mother had moved eight times since Child was born, and that Mother had

---

[4] At the October 4, 2017 hearing, the testimony from the January 31, 2017 hearing was incorporated. N.T., 10/4/17, at 6-7. In addition, Grandmother and Father testified at the October 4, 2017 hearing regarding two custody periods subsequent to March 2017 where Mother did not permit them to exercise their right to custody.

notified Grandmother and the trial court of only one address change. *Id.* at 10-11.

Father also testified at the hearing. He stated that he had had no contact with his son for 16 weeks, N.T., 1/31/17, at 15-16, and that Grandmother accurately described the efforts made to contact Mother. *Id.* 15.

Mother testified in defense that she stopped following the February 22, 2016 custody order because she had learned in October 2016 "through the Prothonotary's Office the court order had been cancelled." N.T., 10/4/17, at 31. She testified that she spoke with her attorney, who informed her that "it was up to me whether I wanted to let them continue their visits." *Id.* at 32. Mother stated, however, that after she learned in March 2017 that the order was still in effect, she began following the order again. *Id.* at 35. Mother further testified that she has had the same phone number and has lived at the some residence since November 2016. *Id.* at 47-48. When confronted with Facebook posts in which she stated that Child's Father and his family could no longer contact her because she changed her number, Mother claimed she had not changed her number because of Father, but rather because of harassment from "other people" and that she informed Father if she changed her number. *Id.* at 50.

In addition to the above testimony, Mother testified that she did not object to providing make-up custody time. N.T., 10/4/17, at 44-46. Mother's

counsel noted Mother agreed to the make-up custody time, but argued that "make-up" custody time was not a proper contempt sanction. *Id.* at 67-68.

The trial court granted Grandparent's motion for contempt and ordered Mother to pay reasonable counsel fees in the amount of $1,000.00 to Grandparents and Father. The court also ordered that Grandparents and Father would have "make-up" custody time:

> [T]o provide restitution for custodial time that [Father and Grandparents] lost by virtue of the contempt [of] the Court Orders that [Grandparents] shall have eight weekends of make up custodial periods and [Father] shall have sixteen Fridays of make up custodial periods. The Court directs such makeup time to begin immediately. It is specifically noted that [Mother] testified under oath that [Grandparents] and [Father] are due this make up time and she has agreed, under oath, to the same. The Court's Order of May 29, 2014 and February 22, 2016 remain in effect and describe the Custody of subject child.

Order, 10/6/17.

Mother filed a timely notice of appeal and raises the following issues:

> I. Whether the trial court committed an error of law and fact by finding Mother in contempt when the record does not support a finding of contempt pursuant to 23 Pa.C.S. § 5323(g)?
>
> II. Whether the trial court committed an error of law by ordering punishments for contempt which were not [commensurate] with the conduct of Mother and the surrounding circumstances?
>
> III. Whether the trial court committed an error of law by ordering punishment for contempt to benefit a non-complaining party?
>
> IV. Whether the trial court committed an error of law by ordering punishments for contempt that are not authorized

- 6 -

by the inclusive list for contempt punishments set forth by 23 Pa.C.S. § 5323(g)?

Mother's Br. at 5 (suggested answers omitted).

## I.    Finding of Contempt

Mother first maintains that the trial court erred in finding her in contempt because she did not willfully disobey a court order. Mother argues that, because of the Praecipe to Discontinue, she did not believe a valid custody order existed and, therefore, she had no intent to violate the order. She notes that in the prior appeal, the trial court in its opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) stated that "[t]o be fair, a reasonable person could easily understand the [Praecipe to Discontinue] to indicate that the custody action has ceased to exist." Mother's Br. at 14 (quoting Trial Court Opinion, filed 3/31/17, at 3).

We review a civil contempt order for an abuse of discretion. *Harcar v. Harcar*, 982 A.2d 1230, 1234 (Pa.Super. 2009) (citing *Hopkins v. Byes*, 954 A.2d 654, 655–56 (Pa.Super.2008)). A trial court abuses its discretion only if "it misapplies the law or exercises its discretion in a manner lacking reason." *Id.* Further, we defer to the trial court's credibility determinations where they are supported by the record, "as that court has had the opportunity to observe [the witnesses'] demeanor." *Id.* at 1236 (quoting *Garr v. Peters*, 773 A.2d 183, 189 (Pa.Super. 2001)).

"To be in contempt, a party must have violated a court [o]rder, and the complaining party must satisfy that burden by a preponderance of the evidence." *J.M. v. K.W.*, 164 A.3d 1260, 1264 (Pa.Super. 2017) (*en banc*)

(quoting **Hopkins**, 954 A.2d at 655). A party seeking a finding of contempt must establish: "(1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." **Id.** (quoting **P.H.D. v. R.R.D.**, 56 A.3d 702, 706 n.7 (Pa.Super. 2012)).

The trial court found that the record supported a finding of contempt because Grandparents credibly testified that Mother "affirmatively and repeatedly refused to comply with her obligations" under the custody order. Trial Court Opinion, filed Nov. 28, 2017, at 3 ("Rule 1925(a) Op."). The court found Mother's explanation—that an "unnamed person in the Prothonotary's Office" told her the case was discontinued and her attorney told her she no longer needed to comply with the custody order—to be not credible. **Id.** The trial court noted Mother had a history of intentionally withholding custody and concealing "her whereabouts and contact information from the other parties and this Court." **Id.** The trial court rejected the contention that Mother withheld custody time because of the advice of counsel, noting that "there is nothing in the record that lawfully gave her the right to withhold custody." **Id.** at 4.

We defer to the trial court's credibility findings, which are supported by the record, and conclude that the trial court did not abuse its discretion when it found Mother in contempt.

## II. Award of Reasonable Counsel Fees

Mother next argues that the award of counsel fees could not be justified as needed to compel future compliance because she had resumed compliance with the order in March 2017. She also argues that counsel fees are not an appropriate sanction here because Grandparents and Father are not innocent parties. Rather, according to Mother, the "the catalyst for all issues was [Grandparents] and Father, through counsel," filing the Praecipe to Discontinue. Mother's Br. at 18. She further maintains the fees were not appropriate because she is proceeding *in forma pauperis* due to her indigence, and she cannot purge the contempt by complying with the order or by paying the counsel fees.

We review an award of counsel fees for an abuse of discretion. ***Wood v. Geisenhemer-Shaulis***, 827 A.2d 1204, 1208 (Pa.Super. 2003). Counsel fees are a proper sanction for contempt for noncompliance with a custody order. 23 Pa.C.S.A. § 5323(g)(v). "Sanctions for civil contempt can be imposed for one or both of two purposes: to compel or coerce obedience to a court order and/or to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance with a court order." ***Mrozek v. James***, 780 A.2d 670, 674 (Pa.Super. 2001) (quoting ***Goodman v. Goodman***, 556 A.2d 1379, 1392 (Pa.Super. 1989)).

We reject Mother's argument that the fee award was improper because she had resumed compliance with the custody order. The trial court disbelieved Mother's testimony that she stopped obeying the custody order

because "unnamed individuals" in the Prothonotary's Office told her that the case had been discontinued and her attorney told her she no longer had to follow the order. 1925(a) Op. at 3. The trial court noted that, as a matter of law, a party can discontinue a custody action in which a complaint has been served only by leave of court or with written agreement of the parties, neither of which circumstance existed here. *See id.* (citing Pa.R.C.P. 1915.3-1(b)(2)). The trial court concluded that upon incorrectly hearing it was discontinued, Mother "deliberately and completely stopped abiding by the Custody Order upon advice of counsel." *Id.* at 5-6. The trial court further noted that Grandmother testified that Mother changed her residence numerous times and failed to apprise Father and Grandparents of the changes, and changed her phone number "in an attempt to ensure that neither [Father] or [Grandparents] could contact her." *Id.* at 5. The court concluded that it "disagree[d] with [Mother's] claim that the punishment was not commensurate with [Mother's] conduct and the surrounding circumstances which were [Mother's] creation." *Id.* This was not an abuse of discretion.

Mother also argues that the trial court erred when it imposed the fees because she does not have the financial ability to pay the fees. However, a trial court may order a party to pay counsel fees as a sanction for violating a custody order without first determining whether the party had the ability to

pay the fees. ***Hopkins***, 954 A.2d at 659. Accordingly, we conclude the trial court did not err in doing so here.[5]

Further, Mother's claim that the award of counsel fees was improper because she was unable to purge herself of the contempt is meritless. Mother cites no case law or statute, and we are aware of none, that states that a person found in contempt of a custody order must be provided an opportunity to purge where the sanction is an award of counsel fees. Rather, the statute authorizes the award of counsel fees as a sanction for a finding of contempt, without mentioning or requiring a purge condition. ***See*** 23 Pa.C.S.A. § 5323(g)(1)-(2) (providing the available sanctions for contempt of custody order, including counsel fees and imprisonment, and stating that "[a]n order committing an individual to jail under this section shall specify the condition which, when fulfilled, will result in the release of that individual"); ***see also Gunther v. Bolus***, 853 A.2d 1014, 1016 (Pa.Super. 2004) ("The typical sanction for civil contempt is remedial in nature. For

---

[5] In ***Hopkins***, the trial court found the mother in contempt for violating a custody order and ordered the mother to pay $500.00 in counsel fees within 90 days. Unlike the trial court order in ***Hopkins***, the order in this case did not state a time period in which Mother was required to pay the counsel fees. A date on which the fees would be due, or a statement that the fees could be made in increments, would be beneficial to determining whether an award is reasonable. ***See Hopkins***, 954 A.2d at 659 (noting that the trial court calculated fee and concluded mother owed "$5.55 per day, hardly an unaffordable burden."). However, because $1,000 is not an unreasonable fee, and a trial court need not determine whether a contemnor is able to pay prior to issuing a sanction of reasonable counsel fees for violation of a custody order, we conclude the trial court did not abuse it discretion.

example, a court may require the contemnor to compensate the opposing party for losses incurred as a result of the violation or reimburse the party's attorneys' fees and costs. It is also common in civil contempt for a court to impose a conditional prison sentence, giving the contemnor an opportunity to purge the contempt and avoid the sentence by compensating the opposing party, paying counsel fees, or doing some other affirmative act within a certain time period").

### III.  Make-Up Custody Time

Mother contends that the trial court erred when it ordered make up custody as a sanction for contempt.[6]

The make-up custody time, however, was not a sanction. Rather, as the trial court stated in its order, Mother agreed that Grandparents and Father were entitled to make-up custody time. Accordingly, the trial court did not err in ordering such time.

### IV.  Sanctions to Benefit Non-Complaining Party

Mother next claims the trial court erred by ordering punishment for contempt to benefit a non-complaining party. She maintains that Grandparents filed the December 29, 2016 petition for contempt and that Father was not a party to the petition. She argues it was error to find her in contempt and award sanctions benefitting Father as she had no notice of, or

_____

[6] For readability, we address Mother's fourth claim before her third claim.

opportunity to defend against, the charge of violation of the order as to Father.

The trial court was of the opinion that because both Grandparents and Father filed the December 29, 2016 petition, the award of sanctions to benefit Father was not error.[7] We disagree.

Grandparents filed the petition for contempt and requested relief for Grandparents, not Father. In their petition, Grandparents stated that Father had not been provided his custody time. Father also testified at the hearing regarding his lost custody time. Father did not, however, file a motion for contempt or motion to join Grandparents' motion. Accordingly, it was error for the trial court to award sanctions based upon the reasoning that Father filed a petition.[8] Accordingly, we vacate the order to the extent it states that Mother must pay counsel fees to Father.

_____

[7] The trial court also claims it was addressing Grandparents February 13, 2017 petition. However, at October 4, 2017 hearing, it was agreed that the February petition, which alleged violations of the January 31, 2017 order, was not at issue. N.T., 10/4/17, at 5-6.

[8] The trial court did not discuss whether Mother had notice that Father alleged her conduct constituted contempt or whether she had an opportunity to address the allegations. *See Diamond v. Diamond*, 792 A.2d 597, 601 (Pa.Super. 2002) ("when the contempt proceedings are predicated on a violation of a court order that followed a full hearing, 'due process requires no more than notice of the violations alleged and an opportunity for explanation and defense'"). Because the award of counsel fees was based on counsel representation that he charged his clients $1,000.00 for the petition, and because Mother agreed to the award of make-up custody time, we decline to determine whether Mother had notice and an opportunity to defend against Father's allegation of contempt.

Counsel stated that he charged his clients a flat $1,000.00 fee for handling the petition for contempt. N.T., 1/31/17, at 14. As counsel filed the petition for Grandparents, not Father, and the information regarding payment was entered during Grandmother's testimony, we will not disturb the requirement that Mother pay $1,000.00 in counsel fees to Grandparents.

Order affirmed in part. Order vacated to the extent it orders the payment of counsel fees to Father. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/4/2018