J-S30004-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JACQUELINE W. ROHRBAUGH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL P. ROHRBAUGH | : | No. 1645 MDA 2023 |

Appeal from the Order Entered November 1, 2023
In the Court of Common Pleas of Dauphin County
Civil Division at No(s): 2015-CV-4889-CU

BEFORE: PANELLA, P.J.E., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.: **FILED: NOVEMBER 18, 2024**

Jacqueline W. Rohrbaugh ("Mother") appeals from the order entered by the Dauphin County Court of Common Pleas on November 1, 2023, finding Mother in contempt of custody orders between Mother and Michael P. Rohrbaugh ("Father"), and directing Mother to reimburse Father's costs and counsel fees. We affirm.

This case involves a long and protracted history of contentious litigation, including multiple petitions for custody and contempt filed by Mother and Father regarding their children. In issuing the instant decision, the trial court described this case as "high conflict" and "egregious." Trial Court's Decision

---

[*] Former Justice specially assigned to the Superior Court.

and Order, 11/1/23, at 2. With that context in mind, the court summarized

the most recent history of this custody matter as follows:

> On September 22, 2021, Mother filed an emergency petition for special relief in custody seeking to relocate the two youngest children, [P.R.] and [G.R], to California. On September 24, 2021, Mother also filed a petition to modify custody and allow relocation. The court denied the emergency petition and scheduled a hearing on November 2, 2021, to address Mother's relocation and modification requests, along with other issues raised by the parties. Before the hearing date arrived, the children's school notified Father that [P.R.] and [G.R.] were absent from school for an extended period. Father traveled to Mother's Phoenixville address to check on the children's welfare and discovered that Mother had provided a mail-drop address rather than the address of their residence and had already moved to California.

> The relocation and modification matters were heard on November 2, 2021, but could not be completed, and a second hearing was scheduled for January 7, 2022. Following the January hearing, the court allowed the parties to obtain the transcript of the court's interviews with [L.R.] and [P.R] and to submit briefs. The court then issued a memorandum decision and custody order on March 4, 2022, denying relocation of the children and providing for two custody schedules depending on whether Mother chose to remain in California or to establish residency in proximity to Father. In consideration of the children's schooling, the court did not require the immediate return of [P.R.] and [G.R.] but allowed them to complete the school year in California.

> Because the summer schedule depended on where Mother chose to reside, after the school year Mother claimed that she intended to remain in California. Consequently, under the March 4, 2022, custody order, Mother was entitled to have physical custody of [L.R.], [P.R.], and [G.R.] for the summer. As a practical matter, [P.R.] and [G.R.] were already in California and remained with Mother. When [L.R.] did not go to California at the end of school, Mother filed an emergency petition and a contempt petition on June 30, 2022. A custody conference on the contempt petition was held on July 19, 2022, at which the parties agreed to have the court interview [L.R.]. After speaking with [L.R.] on July 22, the court entered an order providing for [L.R.] to travel to California on July 29 and return to Pennsylvania on August 3.

Further, the court entered a supplemental custody order on August 5, 2022, reflecting the agreement reached by the parties at the custody conference. Notably, that order required Mother to return [P.R.] and [G.R.] to Pennsylvania by August 15, 2022. The order also directed Father to submit to a hair follicle drug screen by the close of business on July 21, 2022, and provided for the court's interview of [L.R.], which had already occurred.

A short time later, Father filed an emergency petition for special relief on August 8, 2022, to obtain assurances that Mother was preparing for the return of [P.R.] and [G.R.]. The court conferenced with counsel for the parties and entered an order on August 10, 2022, directing Mother to provide Father with the children's travel itinerary and information and documentation needed by Father to enroll [P.R.] and [G.R.] in school and sports.

When Mother failed to provide information as directed by the order of August 10, 2022, and [P.R.] and [G.R.] were not returned to Pennsylvania by August 15 as directed by the order of August 5, 2022, Father traveled to California in search of the children. Sometime between August 17 and August 18, [P.R.] and [G.R.] appeared at the home of the maternal grandparents in Dauphin County. Mother's refusal to relinquish physical custody and her allegations against Father necessitated police involvement to effectuate the custodial exchange, which appears to have occurred on or about August 18, 2022. This constitutes an outline of the major events that lead to the current contempt actions.

Throughout the entirety of this period, there were numerous pleadings and allegations in addition to the main events described above. The court addressed some issues in conferences. The parties were permitted to raise the remaining issues at the contempt hearings.

Trial Court Decision and Order, 11/1/23, at 2-4. Relevant to this appeal, on November 1, 2023, the trial court found Mother in contempt of the court orders dated March 4, 2022, August 5, 2022, and August 10, 2022, and directed her to pay Father an aggregate amount of $13,586.47 for costs and attorney's fees. This timely appeal followed.

Mother raises the following issues on appeal:

1. Whether the trial court erred as a matter of law and/or abused its discretion when it refused to continue the September 22, 2023 hearing to permit [Mother] to obtain new counsel despite allowing [Mother]'s prior counsel to withdraw from the case on September 20, 2023, which resulted in [Mother] attending the September 22, 2023 hearing without the benefit of counsel.

2. Whether the trial court erred as a matter of law and/or abused its discretion in not providing [Mother] with sufficient time at the September 22, 2023 hearing to provide evidence and fully develop the record in this matter.

3. Whether the trial court erred as a matter of law and/or abused its discretion in finding [Mother] in contempt of the trial court's orders, and in determining that [Mother] owes costs and attorney's fees in the aggregate amount of $13,586.47 after $500.00 credit, where such contempt and fees were not consistent with the facts of record.

4. Whether the trial court erred as a matter of law and/or abused its discretion in failing to find [Father] in contempt of the trial court's orders at the September 22, 2023 hearing, where [Father], not [Mother], was actually in contempt of the trial court's orders including, but not limited to, failing to obtain timely drug testing, withholding the children from Mother's custody for multiple consecutive weeks, and discussing the custody case directly with the children, as supported by the facts of record.

5. Whether the trial court erred as a matter of law and/or abused its discretion in improperly ignoring the copious facts of record supporting contempt by [Father], not [Mother], of the trial court's orders, and improperly weighing the facts of record in [Father]'s favor and against [Mother] and completely ignoring [Mother's] contempt and other custody pleadings.

6. Whether the trial court erred as a matter of law and/or abused its discretion in permitting consideration of [Father]'s November 17, 2022 petition for contempt at the first contempt hearing held on November 18, 2022 which petition was procedurally inadequate and filed less than twenty-four (24) hours prior to the hearing.

7. Whether the trial court erred as a matter of law and/or abused its discretion in showing continued bias in favor of [Father] and against [Mother], including but not limited to, in vacating an order requiring [Father]'s drug testing after the due date for the drug test had passed and where [Father] had not complied with the drug testing requirements, where [Father] has previously filed a petition for recusal which was denied, and where the trial court refused to recuse itself from the contempt matter despite showing such continued bias and favoritism toward [Father] and retaliating against [Mother] for [Mother]'s requesting recusal during an active investigation by the Pennsylvania Judicial Conduct Board.

8. Whether the trial court erred as a matter of law and/or abused its discretion in adopting facts from an interview of some of the children that occurred in January of 2022 in support of its contempt decision without re-interviewing the children previously interviewed and interviewing the previously un-interviewed children for the first time contemporaneous to the September 22, 2023 hearing.

*See* Mother's Brief, at 5-8 (suggested answers and unnecessary capitalization omitted; numbering provided).

We review Mother's claims with the following principles in mind:

Our standard of review concerning a trial court's contempt findings is very narrow:

> This Court's review of a civil contempt order is limited to a determination of whether the trial court abused its discretion. If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused.

*Gross v. Mintz*, 284 A.3d 479, 489 (Pa. Super. 2022) (citation omitted).

Additionally, this Court has explained:

Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's

- 5 -

authority and prevents the administration of justice from falling into disrepute. When reviewing an appeal from a contempt order, the [appellate] court must place great reliance upon the discretion of the trial judge …

…

This Court defers to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor.

*Harcar v. Harcar*, 982 A.2d 1230, 1235-36 (Pa. Super. 2009) (citations and brackets omitted.

In her first issue, Mother contends the trial court erred and abused its discretion in denying her request to continue the September 22, 2023 hearing in order for Mother to obtain new counsel.

In reviewing this claim, we are guided by the following standard:

Appellate review of a trial court's continuance decision is deferential. The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion. As we have consistently stated, an abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record[.]

*Commonwealth v. Norton*, 144 A.3d 139, 143 (Pa. Super. 2016) (citation omitted).

In evaluating whether a trial court abused its discretion in denying a continuance request, the reviewing court must consider "whether there was prejudice to the opposing party by a delay, whether opposing counsel was willing to continue the case, the length of the delay requested, and the

- 6 -

complexities involved in presenting the case." ***Rutyna v. Schweers***, 177 A.3d 927, 933 (Pa. Super. 2018) (citation omitted).

On September 1, 2023, counsel for Mother filed a petition to withdraw as counsel, noting Mother "has engaged in behavior that [counsel] finds to be repugnant," and that Mother's behavior had led to fundamental disagreement between counsel and Mother, making it "nearly impossible for [counsel] to represent [Mother]." Petition to Withdraw Appearance as Counsel, 9/1/23, at 1-2. On September 7, 2023, Mother was directed to show cause why counsel was not entitled to the relief he requested. Two weeks later, Mother filed a response to the rule to show cause, along with a letter to chambers in which she requested a continuation of the custody hearing to obtain new counsel, stating that she did not oppose counsel withdrawing his appearance. However, Mother noted that if the hearing were not continued, she would want and need counsel's representation. On September 19, 2023, the trial court granted counsel leave to withdraw.

On September 21, 2023, Mother filed a motion for continuance of the hearing. In the motion, Mother asserted she had only received notice the day before that her counsel was permitted to withdraw, less than 2 days before the scheduled contempt hearing. Mother stated she entered her appearance *pro se* that day and needed more time—specifically "2-3 months out"—to retain new counsel and allow for necessary support for the case due to recent court ordered counseling. The trial court denied the motion the next day.

On September 22, 2023, the parties appeared for the contempt hearing. At the start of the hearing, Mother noted her objection to the withdrawal of her counsel, and orally renewed her request for a continuation, indicating she had a Sixth Amendment right to proper representation. *See* N.T., Contempt Hearing, 9/22/23, at 4. The court denied the request, reasoning as follows:

> Let me be very clear for the record. We are here for a contempt proceeding that began back in 2022. Ma'am, you requested your first continuance of this matter on October 26th of 2022. Then you requested another continuance in November of 2022. Then we had a partial hearing in March of '23. In August of '23 you requested another continuance and now we're here to finally resolve this case.
>
> During the pendency of these proceedings, notwithstanding the fact that throughout this entire process you've had 11 separate counsel, just with respect to the contempt proceedings you've had, if we include Mr. Gebhart who started it, you've had four counsel that have represented you during just this contempt proceeding.
>
> We're gonna resolve these contempts today. We're not granting any additional continuances. You've had−he's had none and you've had five. And so he deserves a right. You're talking about the Sixth Amendment. First of all, that doesn't apply to his civil proceeding that we're engaged in. It doesn't apply at all. You've had the right to have counsel of your choice. Mr. Banks filed an appropriate motion to be removed from your case. We've removed him based on his proper motion after your response. And so we are ready to proceed and you have to avail yourself fact that if you have additional facts you want to present, you know the facts. This is not a complicated case. This is a case that you have been immersed in since, at the very least, the middle of 2022.

*Id*. at 5-6. It its opinion on appeal, the trial court maintains it did not abuse its discretion in denying Mother's continuance request, reiterating the same reasons listed above. *See* Trial Court Opinion, 2/9/24, at 7-8 (noting that the

court "had already been presented with scads of information in the series of contempt hearings that had been conducted previously," so "the right and equitable thing to do was to resolve the contempt matter on September 22, 2023, without further delay to proceedings that had commenced in November of 2022, and had been ongoing for almost an entire year.").

Based on this record, we cannot find the court abused its discretion in denying the continuance. While perhaps not explicitly stated, we find the court considered all relevant factors in denying a continuance. The court indicated that Father, as the opposing party, had a right to have the instant proceedings resolved after numerous partial hearings, continuations, and changes of counsel, all of which are attributed to Mother. The court also noted the instant proceedings were not complex and did not warrant a complicated procedural posture. Finally, we note that Mother was not asking for a limited continuance. After receiving over a year's worth of continuances, Mother was seeking another few months in order to hold another hearing in this protracted contempt proceeding. In fact, the hearing at issue was only scheduled due to a continuance motion filed by Mother the prior month. The trial court did not err in finding this request unwarranted. Accordingly, we conclude the trial court did not abuse its discretion in declining Mother's request for another continuance of the contempt hearing.

In her second issue, Mother argues the trial court erred and abused its discretion in not providing her with sufficient time at the September 22, 2023 hearing to provide evidence and fully develop the record in this matter.

While Mother presents this issue as its own distinct claim, a majority of her argument on this issue is simply a reiteration of her first issue, regarding why the trial court should have allowed a continuance for Mother to retain new counsel. As far as Mother attempts to argue this issue again, we find it without merit for the reasons stated above.

In response to Mother's claim that she was not provided with sufficient time at the September 22, 2023 hearing to provide evidence and fully develop the record, the trial court responds that it expressly and repeatedly advised Mother that she could put any additional information on the record that she wanted to provide; that Mother was given a full opportunity to cross-examine Father; and that Mother testified extensively on her own behalf. This is all in addition to the substantial amount of testimony and information already received throughout the course of three previous hearings held on this contempt matter. Accordingly, Mother's assertion that the record was somehow undeveloped is without merit.

In her third issue, Mother argues the trial court erred and abused its discretion in finding her in contempt, and in determining that she owes costs and attorney's fees totaling $13,586.47.

As is the case with child custody orders in general, we review a contempt order in a child custody case pursuant to an abuse of discretion standard of review. *See Garr v. Peters*, 773 A.3d 183, 189 (Pa. Super. 2001).

In order to support a finding of civil contempt, the petitioning party must prove by a preponderance of the evidence: "(1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." *Coffman v. Kline*, 167 A.3d 772, 780 (Pa. Super. 2017) (citation omitted). With respect to the trial court's decision to find Mother in contempt and award counsel fees and costs to Mother, our child custody statute provides as follows, in relevant part:

> **(g) Contempt for noncompliance with any custody order.—**
>
> (1) A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:
>
> …
>
> (v) Counsel fees and costs.

23 Pa.C.S.A. § 5323(g)(1)(v).

The record is replete with evidence supporting the trial court's finding of contempt and award of counsel fees and costs. With respect to Father's allegations of contempt against Mother, the trial court summarized its findings as follows:

Father's contempt petitions raise multiple issues: Mother's failure to communicate her plans to return [P.R.] and [G.R.] to Pennsylvania; Mother's failure to return the children by the date of August 15, 2022; Mother's false allegations against Father to prevent him from exercising custody; and Mother's interference with Fathers communication with the children and custody. Soon after the entry of the custody order on March 4, 2022, the court was involved with issues relating to the specific custody arrangements for [L.R.], [P.R.], and [G.R.]. Through conferences with counsel for the parties, the court was well-aware of unfolding events. Supplemental orders dated August 5 and August 10, 2022, were issued to effectuate the original custody order and make clear that failure to abide by the orders could result in a finding of contempt and the application of appropriate remedies.

It is clear that Mother failed to return [P.R.] and [G.R.] to Pennsylvania by August 15, 2022, in accordance with the orders of August 5 and August 10, 2022. The court does not find Mother's testimony that she communicated her plans through her attorney to be credible. The court also does not accept Mother's proffered excuse regarding a soccer tournament to absolve her of this willful violation of the court's orders. As a result, given the history of this case and the lack of communication, it was reasonable for Father to be concerned about the welfare of [P.R.] and [G.R.] and to travel to California to obtain physical custody of the children with the assistance of local law enforcement if necessary. The court will require Mother to pay for Father's personal travel expenses and attorney fees to compensate Father for these expenses that he would not have incurred absent Mother's willful disobedience of the court's orders.

The court also finds that Mother intentionally made allegations and engaged in acts that were designed to interfere with Father's custodial rights. This includes false reports to law enforcement, enrolling the children in Mother's local school, and enrolling [L.R.] in the Premier Golf Academy without Father's consent and without paying as promised. These issues are more difficult to remedy as the harm falls ultimately upon the children. The court hopes that Mother will realize the trauma that her actions inflict upon the children and that endanger her own relationship with them.

In addition, the court finds that Father completed drug screens that were negative except for THC for which Father has a

- 12 -

medical marijuana card. Pursuant to the custody order, Mother is responsible to reimburse Father for the cost of these negative drug screens. The court will credit Mother with a payment of $500 that Father's counsel reports receiving from Mother.

Trial Court Decision and Order, 11/1/23, at 6-8. The trial court's factual and credibility determinations are aptly supported by the record.

Based on the above, the record supports the trial court's finding that Mother was in contempt of its prior custody orders. It was therefore within the court's discretion to sanction Mother by requiring her to pay attorney's fees and costs.

Notably, Mother does not challenge the imposition of attorney's fees. Rather, Mother only challenges the court's direction to reimburse Father's travel expenses and costs of his negative drug screens. Specifically, Mother argues reimbursement of these costs imposes sanctions that are not enumerated in the applicable statute. This claim is without merit.

First, the court's imposition of costs for Father's negative drug screens was never meant to be a sanction for contempt. The court was merely enforcing the final custody order, pursuant to which Mother is responsible for the costs of any negative drug screens received by Father that are performed at her request. *See* Custody Order, 3/4/22, at ¶ 19.

Additionally, we discern no abuse of discretion regarding the court's direction to pay for Father's travel expenses. This award was neither arbitrary, nor unreasonable, as Father would not have incurred those expenses had Mother complied with the court's order to return the children to Pennsylvania

on August 15, 2022. It was Mother's conduct that caused Father to incur not only unnecessary legal fees, but also unnecessary costs. As such, Mother should bear the cost of her improper behavior.

Finally, Mother contends the court erred in failing to consider her ability to pay prior to imposing sanctions. Mother fails to provide any case law to support the contention that her ability to pay is a relevant consideration. Importantly, there is "no controlling case law relative to a finding of contempt based on a party's failure to comply with a visitation or custody [o]rder that mandates a determination of the contemnor's ability to pay, prior to the imposition of a sanction in the form of attorneys' fees." ***Hopkins v. Byes***, 954 A.2d 654, 659 (Pa. Super. 2008). On its face, the applicable statute does not require a prior finding of ability to pay, and we decline to engraft a new provision onto clear statutory text. Enforcement of the order is a different story. We do observe, however, that the court appropriately ordered Mother to pay her sanctions in monthly installments, allowing her to pay off the balance slowly over the course of six months.

In her next issue, Mother argues the trial court erred and abused its discretion in failing to find Father in contempt of the trial court's orders. Specifically, Mother argues Father was in contempt of the court's order for numerous reasons including failing to obtain timely drug testing, withholding the children from Mother's custody for multiple consecutive weeks, and discussing the custody case directly with the children.

With respect to Mother's allegations of contempt against Father, the trial court summarized its findings as follows:

Mother['s] allegations can be summarized as follows: Father refused to send [L.R.] for Mother's summer period of physical custody; Father failed to complete drug screens or was late in obtaining drug screens; Father did not facilitate communications with [P.R.] and [G.R.]; Father spoke negatively about Mother to the children; and Father withheld custody of the children after he obtained physical custody in late August 2022; along with allegations against Father's paramour.

The court interviewed [L.R.] on January 7, 2022, as part of the contempt proceedings, and again on July 22, 2022, about his failure to travel to California at the conclusion of the school year to spend the summer with Mother. The court also discussed Mother's proposal to have [L.R.] enroll in the Premier Golf Academy in San Diego, with the costs to be paid by Mother. [L.R.] was clear that he wanted to remain in Pennsylvania, play for his Central Dauphin golf team, and remain at his summer job. The court was able to convince [L.R.] to spend close to a week with Mother, so that she would have a summertime visit with [L.R.]. That visit began on July 29, 2022. When [L.R.] arrived in California, Mother took him to Premier Golf Academy and enrolled [L.R.] in their program. Mother did not disclose that she kept [L.R.] enrolled in the Central Dauphin School District and changed his mode of instruction to virtual schooling. Mother ultimately did not pay for the Premier Golf Academy, which resulted in [L.R.] being terminated from their program. Based on [L.R.]'s age and level of self-determination as a teenager, the court cannot conclude that Father willfully violated the contempt order by not sending [L.R.] to California at the beginning of summer.

The court is well aware that drug screens have been an issue for Father in the past. During the current proceedings, it appears to the court that drug screens were obtained. The court did not receive evidence to establish the timing of the screens. The court is not convinced based on Mother's allegations alone that Father willfully violated the custody order provision regarding drug screens. Similarly, there are multiple allegations from both parents of disparagement by the other parent and failure to permit communication with [P.R.] and [G.R.]. In these matters the court is left to judge the credibility of the parents. Given the level of

- 15 -

conflict in the case, the court suspects both parties speak unkindly of the other parent but will not find contempt on this basis.

The court agrees that Father withheld custody of [P.R.] and [G.R.] when he obtained physical custody of the children in late August 2022. However, the physical custody provisions of the March 4, 2022, custody order were dependent upon Mothers place of residence. Given Mothers representation in summer that she would remain in California, it is not unreasonable for Father to expect confirmation that Mother truly reestablished residence in Pennsylvania. The court also notes the audacious nature of this claim after Mother kept the children from Father for over seven months by relocating the children in violation of the relocation process and manipulating the custody schedule. The court normally attempts to rectify contemptuous withholding by providing the innocent parent with make-up time. In this case Father would be entitled to far more make-up time than Mother.

From the court's interviews with [P.R.] and [L.R.], the court concludes that the children have a good relationship with Father's paramour. The children did not mention any concerning behavior on the part of the paramour for which Father would bear responsibility. As a result, the court cannot conclude that Father violated the custody order for any conduct of the paramour.

Trial Court Decision and Order, 11/1/23, at 4-6. Again, the trial court's factual and credibility determinations are supported by the record. Based on the above reasoning, we cannot find the trial court abused its discretion in not finding Father in contempt of the court's orders based on the allegations presented. Mother is not due any relief on this claim.

In her fifth issue, Mother asserts the trial court improperly weighed the evidence against her and in favor of Father. While Mother presents this claim as a distinct issue, she merely refers us to her argument from the prior issue regarding the court not finding Father in contempt. As stated above, we find the record supports the trial court's determination to find Mother in contempt,

and not find Father in contempt. As Mother does not present any new argument for this claim, we find we have already addressed this claim above.

We note the trial court's credibility determinations are supported by the record. *See Harcar*, 982 A.2d at 1236. Therefore, to the extent Mother claims the court improperly weighed the testimony presented, we will not reweigh or disturb the trial court's credibility determinations on appeal. *See id*.

In her sixth issue, Mother argues the trial court erred and abused its discretion in permitting consideration of Father's November 17, 2022 amended petition for contempt at the first contempt hearing held on November 18, 2022. Specifically, Mother argues the petition was procedurally inadequate and untimely filed less than 24 hours prior to the hearing.

> The notice requirements for custody contempt matters are set forth in Pennsylvania Rule of Civil Procedure 1915.12. Under Rule 1915.12(a), a contempt petition must begin with a section entitled "Notice and Order to Appear." It is required to: inform the respondent of the nature of the action against her; order the respondent to appear on the appointed hearing date; indicate that a warrant for the respondent's arrest may be issued if the respondent does not appear for the hearing; and warn of the penalties that could be imposed if the court finds the respondent in contempt.
>
> …
>
> Another notice requirement for custody contempt is that, before a hearing takes place, the petition must "be served upon the respondent by personal service or regular mail." Pa.R.C.P.1915.12(d). Service is not valid where it is made upon an attorney who represented the party to be served in unrelated matters, and who never enters an appearance in the relevant case. In addition, a "petition" for purposes of Rule 1915.12 includes not just the notice and order to appear, but also allegations of "facts which constitute willful failure to comply" with the custody order in question. *See* Pa.R.C.P.1915.12(b).

*Everett v. Parker*, 889 A.2d 578, 580-81 (Pa. Super. 2005) (some citations omitted).

Due to the convoluted procedural history of this case, we find an extended review of the procedural background surrounding the petition at issue is necessary for disposition of this issue.

Relevantly, on August 18, 2022, Father filed an "Emergency Petition for Special Relief and Contempt," related to Mother's failure to abide by the court's order to return the children to Pennsylvania on August 15, 2022.

On September 9, 2022, following a status conference, the court denied Father's petition for special relief on the basis that the children were at that time back in Pennsylvania. **See** Trial Court Order, 9/9/22, at ¶ 1. Acknowledging that the petition also raised issues of contempt against Mother, the court directed Father to file a separate petition for contempt pursuant to the local rules of civil procedure. **See id**.

To address other matters, at Mother's request, a hearing was scheduled for October 26, 2022. This hearing was later continued to November 18, 2022.

The day before the hearing, on November 17, 2022, Father filed an amended petition for contempt, consisting of ten counts of contempt, a majority of which had been presented in Father's August 18, 2022 filing.

On November 18, 2022, the parties appeared for the already scheduled hearing. At the outset, Mother's counsel made an oral motion to have Father's amended contempt petition dismissed for failure to comply with notice and

service requirements, and local rules. The court indicated its preference to not further prolong what had already been a "long, contentious series of litigation." N.T., 11/18/22, at 3. The court was insistent that despite any alleged imperfections with compliance with notice and service requirements, that the allegations of contempt would nevertheless be heard eventually, as Father could simply file an amended petition that did fully comport with the rules. *See id*. at 4-12. However, the court acknowledged that it was understandable Mother would not be fully prepared to argue against the counts of contempt due to the recent nature of the filing. Accordingly, both parties agreed to continue argument on the amended petition for contempt. The court subsequently entered an order scheduling the hearing to address Father's amended petition for contempt for a later date. A few days later, Mother filed a motion for reconsideration, reasserting her argument that Father's amended petition failed to comply with local service and notice requirements. The court denied the motion.

On March 29, 2023, a hearing was held. Following testimony and consideration of a separate matter, the court stated it was going to address any outstanding contempt matters. Father then presented testimony on 9 out of the 10 counts of contempt included in the November 17, 2022 petition, without any objection. At the end of the hearing, the court scheduled a hearing for June 14, 2023 to continue the contempt matter. Following a partial hearing on June 14, 2023, the court scheduled another partial hearing for August 23,

2023. At Mother's request, the hearing was continued until September 22, 2023. After the court denied Mother's request to continue the hearing again, a final hearing was held on September 22, 2023.

On appeal, Mother only takes issue with the court's "consideration" of the petition at the November 17, 2022 hearing. *See* Mother's Brief, at 23. Specifically, Mother argues "[t]he fact that the Trial Court may have scheduled the petition to be heard at a later date does not change the fact that the petition was legally and procedurally deficient." *Id*. at 24. As argued at the November 18, 2022 hearing, Mother maintains that *Everett* is dispositive of this issue. We disagree and find the facts and procedural history of *Everett* distinguishable from this case.

In *Everett*, this Court held that consideration of a petition for contempt did not comply with the notice requirements of Pa.R.C.P.1915.12 and was not properly served in violation of the mother's due process rights. *See Everett*, 889 A.2d at 580-81. Importantly, this holding was based on the fact that the petition for contempt was not in the format prescribed by the rule and did not include the required information; the order did not make clear that the mother was required to appear at a hearing; and the order did not make clear what contempt is and what the penalties would be if she were found in contempt. *See id*. Finally, we found the manner of service was deficient where, instead of serving the mother directly, the father served the petition for contempt on an attorney who represented the mother in an unrelated matter. *See id*. at

581 (holding "[s]ervice is not valid where it is made upon an attorney who represented the party to be served in unrelated matters, and who never enters an appearance in the relevant case.").

This case is readily distinguishable. Here, Father's counsel served Mother's counsel with a copy of the petition for contempt. It is undisputed that Mother's counsel received the petition. Based on the record before us, Mother was put on notice at the November 18, 2022 hearing that the contempt matters would be heard. However, the court did not hear any testimony or argument on the contempt matter that day. Instead, the court continued the contempt matter to a later date, upon the agreement of both parties, specifically so that Mother could prepare. Accordingly, Mother was provided with significant time to prepare evidence and argument concerning the contempt issues. Further, the contempt issues were heard over the span of multiple hearings, during which Mother had plenty of opportunity to present her case.

Based on this record, we cannot conclude Mother's due process rights were violated as she was given sufficient notice and an opportunity to prepare argument and introduce evidence on the contempt issues. Therefore, Mother's contention is unavailing.

In her next issue statement, Mother argues the trial court erred and abused its discretion in showing continued bias in favor of Father and against Mother. However, Mother's entire argument for this issue is a claim that the

court erred in continuing to enter substantive orders in this matter, including the order appealed from, because she asserts a March 17, 2023 motion to recuse filed by Mother remained pending.

Preliminarily, we find Mother's contention that the motion to recuse remained pending is belied by the record. In response to the motion to recuse, the court entered an order on March 20, 2023, concluding that no disqualification was required by the Code of Judicial Conduct. The court however agreed with Mother's concern in her petition that the upcoming custody proceeding scheduled for March 29, 2023 was unlikely to be concluded in one day. Accordingly, to address Mother's concern regarding her opportunity to be heard and present witnesses, the court scheduled a second day for the hearing on March 31, 2023. The court acknowledged that Mother was entitled to address any remaining issues she had at those hearings. Other than that acknowledgment, the court specifically denied the motion to recuse in all other respects. Notably, Mother did not raise the issue of recusal at any point during the hearing held on March 29, 2023, or any of the later hearings.

As the court specifically denied Mother's motion for recusal, and Mother never objected to the denial, nor did she ever raise additional related issues at any hearings with the court, we find this issue without merit.

We note, while Mother references a review by the Judicial Conduct Board in her issue statement, she does not expand on this allegation in the body of her argument. As such, we are unable to verify whether or not a complaint

was filed with the conduct board or if an investigation ever ensued. The trial court responds that such complaints are confidential and as such they would not be privy to that information, and accordingly would be unable to "retaliate" based on such. **See** Trial Court Opinion, 2/9/24, at 14-15. Again, as we are unable to verify this information based upon Mother's filings, we find any such claim waived.

In Mother's final issue, she asserts the trial court erred and abused its discretion in adopting facts from an interview of some of the children that occurred in January of 2022 in support of its contempt decision without re-interviewing the children previously interviewed and interviewing the previously un-interviewed children for the first time contemporaneous to the September 22, 2023 hearing.

Mother's entire argument in this regard is that she did not know the court was going to consider the prior interviews until she received the November 1, 2023 order, and that it was an abuse of discretion for the court not to conduct new interviews. Notably, Mother does not provide any citations to support this assertion.

Further, the prior interviews with the children were discussed throughout the multiple hearings held on the instant contempt matter, including the final hearing prior to the court's decision. **See** N.T., 9/22/23, at 71 (the court making it clear "[L.R.] previously testified before this [c]ourt. So we have plenty of testimony on those issues."); **see id**. at 101 (the court

stating to Mother, "Well, I will remind you that I spoke to [L.R.]. That's part of the record. … I want to remind you that you're under oath and there are records and things in this case. I personally spoke to [L.R.]."; and Mother responding, "I know."); *see also id*. at 134 ("The bottom line, [Mother], in terms of the golf issue and [L.R.] is when you−we had a chambers meeting, the Judge interviewed [L.R.] …"). Accordingly, we find Mother's assertion that she did not know those interviews were taken into consideration until the November 1, 2023 order to frankly be disingenuous. As such, we find this issue without merit.

As none of Mother's issues merit relief, we affirm the order finding Mother in contempt.

Order affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/18/2024